**James CLOSE, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 06SC520.

Supreme Court of Colorado,
En Banc.

March 24, 2008.

Douglas K. Wilson, Colorado State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

In this Crim. P. 35(c) case, we are asked to address the issue of whether conflict-free counsel should be appointed for James Close in order to investigate and pursue potential relief from operation of the post-conviction time bar, at a trial court hearing, based upon the justifiable excuse or excusable neglect exception to the time bar and a colorable claim of ineffective assistance of counsel for failure to raise the applicability of *People v. Nguyen*, 900 P.2d 37 (Colo.1995). The Colorado Office of the Public Defender represented Close in direct appeal and post-conviction proceedings leading to our decision in *Close v. People* ("*Close III*"), 48 P.3d 528 (Colo. 2002). *Close III* involved a timely-filed Crim. P. 35(c) motion brought by the public defender's office on behalf of Close.

After our decision in *Close III*, Close, filing pro se, amended his previously filed Crim. P. 35(a) motion to include a Crim. P. 35(c) motion requesting the appointment of conflict-free counsel to represent him in ineffective assistance of counsel proceedings involving the public defender's office. In this motion, Close raised the applicability of our decision in *Nguyen* to his sentence. Applied to Close, *Nguyen* could result in a reduction of Close's sentence from sixty to thirty years. The public defender's office did not raise the applicability of *Nguyen* at any time during its representation of Close in the trial court, court of appeals, or before this court in the proceedings leading to our decision in *Close III*.

In the case now before us, on remand from *Close III*, the trial court summarily ruled that Close's pro se Crim. P. 35(a) and 35(c) motions, as well as Crim. P. 35(b) and 35(c) motions filed on his behalf by the public defender's office, were all time barred. The court of appeals affirmed. We granted certiorari to review the court of appeals' judgment.[1]

We hold that the trial court must appoint conflict-free counsel to investigate and pursue potential relief from operation of the post-conviction time bar, at a trial court hearing, based upon the justifiable excuse or excusable neglect exception of section 16–5–402(2)(d) and a colorable claim of ineffective assistance of counsel for failure of the public defender's office to raise the applicability of the *Nguyen* decision to Close's sentence. In light of our decision, we find it unnecessary to address the remainder of the certiorari issues.

## I.

Close is currently serving a sixty year Department of Corrections sentence for participating, with three other individuals, in the attack and robbery of six Japanese students

---

1. The four issues on which we granted certiorari are:

(1) Whether the court of appeals erred when it failed to follow Rule 35(b)'s express language and held that defendant's motion for sentence reconsideration was untimely even though it was filed, as allowed by Rule 35(b), within 120 days of this Court's decision affirming defendant's sentence in *Close v. People*, 48 P.3d 528 (Colo.2002);

(2) Whether the holding in *People v. Nguyen*, 900 P.2d 37 (Colo.1995), should be applied retroactively thus permitting a sentence reduction in this case;

(3) Whether the court of appeals applied the wrong standard of review to the district court's finding that defendant lacked justifiable excuse or excusable neglect for filing a late Crim. P. 35(c) motion when the district court made its decision based solely on the written pleadings;

(4) Whether the court of appeals erred in denying the defendant conflict-free counsel when the district court denied a hearing on his pro se Crim. P. 35(c) motion.

from Teikyo Loretto Heights University. A jury convicted Close in 1991 of criminal mischief, under section 18–4–501, 8B, C.R.S. (1986); first degree criminal trespass, under section 18–4–502, C.R.S. (1986); theft, under section 18–4–401, C.R.S. (1986); conspiracy to commit criminal mischief and theft, under section 18–2–101, C.R.S. (1986); aggravated robbery, under section 18–2–201, C.R.S. (1986); attempted aggravated robbery, under section 18–2–101, C.R.S. (1986); second-degree assault, under section 18–3–203, C.R.S. (1986); ethnic intimidation, under section 18–9–121, 8B, C.R.S. (1990 Cum.Supp.); and conspiracy to commit assault and ethnic intimidation, under section 18–2–201, C.R.S. (1986). At sentencing, the trial court applied the mandatory crime-of-violence sentence enhancement to Close's sentence for the six second-degree assault convictions.

During trial, Close was represented by a court-appointed public defender. Following Close's sentencing, the public defender's office requested that the trial judge appoint appellate counsel to represent Close on appeal, arguing that Close's appellate claim had merit. The trial judge then appointed the public defender's office to represent Close in appellate proceedings. With the assistance of the public defender's office, Close filed a direct appeal and, due to a court of appeals' judgment, *People v. Close ("Close I")*, 867 P.2d 82 (Colo.App.1993), obtained a reduction in his sentence from seventy-five to sixty years. The resulting sixty year sentence was the minimum prescribed by the crime-of-violence statute, as it existed prior to our decision in *Nguyen*—six consecutive five year sentences for second-degree assault and three consecutive ten year sentences for armed robbery.

The harshness of his remaining sentence, even after a fifteen year reduction, prompted the trial judge to remark that he would reduce Close's sentence even further if that option were available under Colorado law. The trial judge stated:

I do feel, very frankly, that although the crimes involved here were serious, that a 60 year sentence under these circumstances is—well, I can only say that it's more severe than any sentence I would

have handed out if the law did not require a 60 year sentence, which it does.

On remand from *Close I*, Close, acting pro se and with the assistance of the public defender's office, filed Crim. P. 35(a), (b), and (c) motions in an effort to obtain further sentence reduction. That litigation focused on alleged errors in the complicity instruction at trial and the trial court's post-conviction ruling that Close was not entitled to a proportionality review of his sentence. Affirming the trial court, the court of appeals decided against Close on both issues in *People v. Close ("Close II")*, 22 P.3d 933 (Colo. App.2000).

We granted certiorari on the proportionality review issue and held in *Close III* that Close was entitled to an abbreviated proportionality review. 48 P.3d 528. Instead of returning the case to the trial court, as we could have, we elected to conduct the abbreviated proportionality review. Upon conducting that review, we upheld Close's sixty year sentence.

At no time in the proceedings leading up to *Close III* did the public defender's office raise, on Close's behalf, the applicability of *Nguyen* to Close's sentence.

On remand from *Close III*, Close filed amended pro se Crim. P. 35(a) and (c) motions for relief from his sixty year sentence. Alleging ineffective assistance of counsel and the applicability of *Nguyen* to his sentence, he requested the appointment of conflict-free counsel to represent him. Although Close phrased this motion as being directed at his public defender trial counsel, his pro se pleading places the public defender's office in a conflict position and necessarily implicates that office in failing to raise the applicability of *Nguyen* on his behalf in post-conviction proceedings.

In an effort to protect Close's rights, the public defender's office then filed Crim. P. 35(b) and (c) motions to place the applicability of *Nguyen* before the trial court. The trial court, without a hearing, summarily ruled that the Crim. P. 35(a), (b), and (c) motions were time barred. In its unpublished opinion that we now review, the court of appeals upheld the application of the sec-

tion 16–5–402(1) time bar for post-conviction relief. The court of appeals refused to grant any relief from the time bar based on the justifiable excuse or excusable neglect provision of section 16–5–402(2)(d), reasoning that we had not issued a decision holding *Nguyen* to be retroactive.

We now turn to our analysis of why the court of appeals and the trial court erred in applying the Crim. P. 35(c) time bar of section 16–5–402(1) without holding a hearing, and why conflict-free counsel must be appointed to represent Close in further proceedings.

## II.

■ We hold that the trial court must appoint conflict-free counsel to investigate and pursue potential relief from operation of the post-conviction time bar, at a trial court hearing, based upon the justifiable excuse or excusable neglect exception of section 16–5–402(2)(d) and a colorable claim of ineffective assistance of counsel for failure of the public defender's office to raise the applicability of the *Nguyen* decision to Close's sentence.

## A.

### Exception to Application of the Time Bar

Following our decision in *Close III*, the trial court and the court of appeals ruled that any further post-conviction relief was time barred. However, Crim. P. 35(c), section 16–5–402(2)(d), contains a provision excusing operation of the time bar when the defendant has justifiable excuse or excusable neglect for not bringing the claim within the otherwise applicable time period. The statute provides:

> (2) In recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders, the only exceptions to the time limitations specified in subsection (1) of this section shall be:
>
> (d) *Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the*

*result of circumstances amounting to justifiable excuse or excusable neglect.*

§ 16–5–402(2)(d), C.R.S. (2007) (emphasis added).

Justifiable excuse or excusable neglect based on the alleged ineffective assistance of counsel is a matter that should be addressed, in the first instance, by the trial court. Our review today is limited to the question of whether Close was entitled to a hearing to determine the applicability of the time bar to his Crim. P. 35(c) motion. Because we consider, as a matter of law, whether the facts alleged, if true, could constitute justifiable excuse or excusable neglect pursuant to section 16–5–402(2)(d), we review this question de novo.

■ The defendant must allege facts that, if true, would establish justifiable excuse or excusable neglect in order to entitle him or her to a hearing on the applicability of this exception to the time bar. *People v. Wiedemer*, 852 P.2d 424, 440 n. 15 (Colo. 1993). A defendant need not set forth the evidentiary support for his or her allegations; instead, a defendant need only assert facts that, if true, would provide a basis for relief. *Id.*

■ In addressing the applicability of the justifiable excuse or excusable neglect time bar exception, the trial court must consider the particular facts of a case, so as to give effect to the overriding concern that defendants have a meaningful opportunity to challenge their convictions as required by due process. *People v. Shepherd*, 43 P.3d 693, 700 (Colo.App.2001).

■ We have identified the following non-exhaustive list of factors for consideration in addressing the issue of justifiable excuse or excusable neglect under section 16–5–402: (1) whether there are circumstances or outside influences preventing a challenge to a prior conviction and the extent to which the defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of relevant avenues of relief that are available; (2) whether a defendant had any previous need to challenge a conviction and either knew that it was constitutionally infirm or had reason to

question its validity; (3) whether a defendant had other means of preventing the government's use of the conviction, so that a post-conviction challenge was previously unnecessary; and (4) whether the passage of time has an effect on the State's ability to defend against the challenge. *Wiedemer*, 852 P.2d at 441–42.

## B.

### Conflict–Free Counsel

The public defender's office cannot argue the claim of ineffective assistance of counsel against itself. *Murphy v. People*, 863 P.2d 301, 305 n. 11 (Colo.1993); *see also McCall v. Dist. Court*, 783 P.2d 1223, 1227 (Colo.1989). Under Rule 1.10 of the Colorado Rules of Professional Conduct, imputed disqualification applies with equal force to court-appointed attorneys. *See People ex. rel. Peters v. Dist. Court*, 951 P.2d 926, 932 (Colo.1998).

■ Although a defendant does not have a constitutional right to counsel in post-conviction proceedings, *Murphy*, 863 P.2d at 301 n. 9, the trial court has authority to appoint counsel in Crim. P. 35(c) proceedings. *Duran v. Price*, 868 P.2d 375, 379 (Colo.1994). Here, following *Close I*, the trial court appointed the public defender's office to represent Close in the post-conviction proceedings he pursued through the trial court, the court of appeals, and this Court in *Close III*.

After our decision in *Close III*, the trial court invoked the time bar of section 16–5–402 and summarily refused to consider any exception to its application. It reasoned that Close had brought a Crim. P. 35(c) motion pro se after the court of appeals' decision in *Close I*, thereby demonstrating that he had not been prevented from filing a Crim. P. 35(c) motion within the time period for bringing a timely post-conviction claim.

■ However, the trial court appointed the public defender's office to represent Close in post-conviction proceedings. The trial court has authority to appoint alternative defense counsel to represent Close, if the stated factual basis and alleged conflict of interest are sufficient to warrant pursuit of an ineffective assistance of counsel claim in-

volving the public defender's office. *See People v. Mills*, 163 P.3d 1129, 1133 (Colo.2007). Thus, the issue of justifiable excuse or excusable neglect in this case turns on the public defender's failure to raise *Nguyen* when it could have done so in the timely-filed Crim. P. 35(c) proceedings it litigated on Close's behalf leading up to our decision in *Close III*.

Most significantly, at stake in this case is a thirty year sentence reduction for a youthful offender, who the trial court itself recognized was being harshly but mandatorily sentenced under the pre-*Nguyen* statute. The public defender's office could have made the *Nguyen* argument when appointed to represent Close in his post-conviction proceedings following *Close I*. *See People v. Hickey*, 914 P.2d 377, 378–79 (Colo.App.1995).

In *People v. Duke*, the court of appeals remanded a case to the trial court for appointment of conflict-free counsel to litigate whether post-conviction counsel's failure to file a timely Crim. P. 35(b) motion constituted ineffective assistance of counsel, which would excuse a late filing of the motion. 36 P.3d 149, 153 (Colo.App.2001); *see also Swainson v. People*, 712 P.2d 479, 480 (Colo. 1986). Likewise, ineffective assistance of counsel in Crim. P. 35(c) proceedings is colorable grounds for appointment of conflict-free counsel and a trial court hearing on justifiable excuse and excusable neglect.

## C.

### The Public Defender's Failure to Raise *Nguyen* Is Colorable Grounds for a Claim of Ineffective Assistance of Counsel

The central thrust of Close's Crim. P. 35 motions now before us concerns the applicability of *Nguyen* to Close's case. Moreover, the four certiorari issues in this appeal revolve around the applicability of *Nguyen*.

In *Nguyen*, a decision issued following Close's conviction, we held that equal protection under the law is violated if attempted second-degree assault is treated as an automatic crime-of-violence, because attempted first-degree assault is not an automatic crime-of-violence. 900 P.2d at 41. We struck the crime-of-violence sentencing provi-

sion as it applied to second-degree assault, defined in section 18–3–203(1)(b), C.R.S. (1995).

Close was convicted under section 18–3–203(1)(b), the same statute at issue in *Nguyen*. The same crime-of-violence sentence enhancer that was struck down in *Nguyen*, as a violation of equal protection, was applied to Close's conviction and sentence. *See* § 18–3–203(2)(c), C.R.S. (1986). The jury convicted Close of six counts of assault in the second-degree. The charging document, the jury instructions relating to second-degree assault, and the verdict forms in Close's case all identify that Close was convicted of assault in the second-degree.[2]

At the time Close was convicted of assault in the second-degree, the statute included attempted assault. Section 18–3–203(1)(b), C.R.S. (1986), stated:

A person commits the crime of assault in the second degree if ... [w]ith intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon. . . .

■ In *Nguyen*, we relied on a line of Colorado cases dating back to 1977 and before[3] to hold that the second-degree assault statute, section 18–3–203, violated the equal protection guarantees, because it imposed a harsher penalty for less serious criminal con-

duct than did the first-degree assault statute, section 18–2–202. 900 P.2d at 40. For this application of pre-existing law, *Nguyen* cited to *People v. Bramlett*, 194 Colo. 205, 210, 573 P.2d 94, 97 (1977), and other cases,[4] that stand for the proposition that a lesser offense cannot be punished more seriously than a greater offense. In *Bramlett*, we held un-constitutional a sentencing scheme that provided for a greater penalty for first-degree assault than criminally negligent homicide. *Id.* at 210, 573 P.2d at 97.

In *Nguyen*, the prosecution did not contest the application of pre-existing law under the *Bramlett* equal protection line of cases. 900 P.2d at 37. Instead, the disagreement we resolved in *Nguyen* concerned the appropriate remedy for the equal protection violation. *Id.* at 38. The prosecution argued, and we agreed, that the appropriate remedy was to strike the crime-of-violence sentence enhancement in section 18–3–203(2)(c), as applied to Nguyen's conviction. *Id.* at 41.

■ We reject the prosecution's argument that Close's case can be differentiated from *Nguyen* because bodily injury, a basis for crime-of-violence sentencing, was a fact before the jury in Close's case. The prosecution's argument misses the crucial fact that, given the circumstances of his case, Close's jury returned a verdict of second-degree assault on an instruction that included attempt-

---

2. *See* Amended Complaint/Information (identifying criminal charges against Close as "Assault in the Second Degree, C.R.S. § 18–3–203," denoting them as counts 17–22, and stating, "That on the 7th day of October, 1990, at the City and County of Denver, State of Colorado, James Clifford Close, Jr., ... with intent to cause bodily injury to another, *did unlawfully, and feloniously cause and attempt to cause* bodily injury to . . . .") (emphasis added); *see also* Jury Instruction No. 2 ("The Defendant is charged with ... Assault In The Second-Degree against. . . ."); Jury Instruction No. 22 ("The elements of the crime of Assault In The Second Degree are: (1) That the Defendant, (2) in the City and County of Denver, State of Colorado, on or about October 7, 1990, (3) with intent to cause bodily injury to another person, (4) *caused or attempted to cause such injury* to any person, (5) by means of a deadly weapon.") (emphasis added); Jury Verdict Forms Count Nos. 17–22 ("We the jury find the Defendant, James Clifford Close, Jr. GUILTY ... [of] Assault in the Second Degree. . . .").

3. We decline to address the retroactivity argument raised in this case because we find that *Nguyen* was based on a well-established constitutional principle. *See People v. Johnson*, 142 P.3d 722, 726 (Colo.2006) ("We make this inquiry because no retroactivity analysis would be necessary if Blakely 'simply applied a well-established constitutional principle to govern a case which [was] closely analogous to those which ha[d] been previously considered in the prior case law.' ").

4. *See also Nguyen's* reliance on *Smith v. People*, 852 P.2d 420, 422 (Colo.1993); *People v. Weller*, 679 P.2d 1077, 1082 (Colo.1984). In addition, *Bramlett* cites to *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975) and *People v. McKenzie*, 169 Colo. 521, 458 P.2d 232 (1969) for the premise that a statute that prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations violates a person's right to equal protection of the laws. 194 Colo. at 208, 573 P.2d at 96.

ed assault.[5] Thus, based on the jury verdict, the jury instructions, and the complaint, *Nguyen* is applicable to Close's six second-degree assault convictions.

In view of *Nguyen*, and its reliance on the *Bramlett* line of cases, the alleged ineffective assistance of counsel in this case is not simply a matter of missing a case citation; rather, it involves a constitutional holding directly applicable to Close's case defining the parameters of his sentence. The allegation that counsel failed to inform the court of the constitutional limitations of Close's sentence, which in turn resulted in a sentence twice the constitutionally permissible level, is within the standard for measuring ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Accordingly, we determine, as a matter of law, that Close has alleged facts which, if true, would establish justifiable excuse or excusable neglect, and therefore merit a hearing. The trial court must appoint conflict-free counsel to investigate and pursue potential relief, from operation of the post-conviction time bar, at a trial court hearing, based upon the justifiable excuse or excusable neglect exception of section 16–5–402(2)(d) and a colorable claim of ineffective assistance of counsel for failure of the public defender's office to raise the applicability of the *Nguyen* decision to Close's sentence.[6]

## III.

Accordingly, we reverse the judgment of the court of appeals with directions that it return this case to the trial court to appoint Close conflict-free counsel and conduct further proceedings consistent with this opinion.

Justice EID dissents and JUSTICE RICE joins in the dissent.

Justice EID, dissenting.

The majority concludes that Close has stated a colorable claim of ineffective assistance of counsel based on the fact that the Chief Appellate Deputy Public Defender, who represented Close before this court in an appeal of a previous Rule 35(c) motion, failed to call our attention to *People v. Nguyen*, 900 P.2d 37 (Colo.1995)—a decision that the majority says is "applicable to Close's [case]." Maj. op. at 1022. The majority remands the case for appointment of conflict-free counsel and a hearing, and concludes that it is "like[ly] that it will be necessary [for the trial court on remand] to resentence Close." *Id.* at 1022 n. 6.

In my view, the majority makes a fundamental error by finding *Nguyen* to be "applicable" to Close's case. It bases its conclusion on the fact that Close and the defendant in *Nguyen* were sentenced under the same statute. Maj. op. at 1021. Yet the majority performs no serious analysis of the sentencing statute at issue, and therefore misses the fact that it covered both *completed* second degree assault and *attempted* second degree assault. It was only the defendant's convictions for attempted assault that we found problematic in *Nguyen*. Because Close was convicted of completed, not attempted, assault, *Nguyen* is not applicable here. Close's

---

**5.** Neither we nor the trial court can conclude that the jury convicted Close of completed, rather than attempted, assaults. The instructions and verdict form did not include a special interrogatory asking the jury to choose between the two; we are precluded from inquiring into the jurors' intent and must presume they followed the trial court's instructions and discharged their duties faithfully. *Stewart ex rel. Stewart v. Rice*, 47 P.3d 316, 322 (Colo.2002). At best, the verdict is ambiguous with regard to the jury's intent. In the same year we decided *Nguyen*, the General Assembly removed the attempt language from the second-degree assault statute under which Close was convicted, thereby eliminating the possibility of such an ambiguity and narrowing the potential applicability of *Nguyen* to defendants like Close convicted under the prior statutory

language. *See* 1995 Colo. Sess. Laws, v. 2, ch. 240, sec. 18–3–203(1)(b), at 1251. When the statute under which a defendant is convicted allows imposition of a harsher punishment or a less harsh punishment, we accord the defendant the benefit of a construction favoring the less harsh punishment pursuant to the rule of lenity. *See People v. Abiodun*, 111 P.3d 462, 468 (Colo. 2005).

**6.** Because of the likelihood that it will be necessary to resentence Close within the applicable sentencing range without the sentence enhancer, we find it unnecessary to address the Crim. P. 35(b) issue in this case in deference to the trial court proceedings.

counsel failed to make an equal protection argument based on *Nguyen* not because she was ineffective, as the majority holds, but because *Nguyen* is not applicable to Close's case. Because the majority finds otherwise, I respectfully dissent from the majority's opinion.

## I.

The majority does not dispute the fact that Close's Rule 35(c) claim is time-barred, as it clearly is.[7] Thus the question is whether this bar can be lifted on grounds of justifiable excuse or excusable neglect, *see* § 16–5–402(2)(d), C.R.S. (2007), which may include ineffective assistance of post-conviction counsel. *See, e.g., Silva v. People*, 156 P.3d 1164 (Colo.2007). The majority holds that Close has stated facts that are sufficient to support a finding of ineffective assistance of post-conviction counsel "as a matter of law," and orders the appointment of conflict-free counsel to investigate his claim. Maj. op. at 1022. Yet it bases this conclusion on the slimmest of showings: namely, that Close was sentenced under the same statute we found problematic in *People v. Nguyen*, 900 P.2d 37 (Colo.1995), and that *Nguyen* was not raised by the Chief Appellate Deputy Public Defender on post-conviction review. Maj. op. at 1021–22.

We recently addressed the circumstances under which conflict-free counsel must be appointed to investigate allegations of ineffective assistance of counsel in *People v. Mills*, 163 P.3d 1129, 1134 (Colo.2007). In that case, the defendant argued that conflict-free counsel should be appointed to investigate a claim of ineffective assistance whenever the current public defender has a good faith belief that the public defender in the prior proceeding was ineffective. *Id.* In a unanimous opinion, we disagreed with this argument. We began by noting that "[t]he standard for making a successful ineffective assistance of counsel claim is very high." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also id.* at 1133 (noting that,

under *Strickland*, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different); *Silva*, 156 P.3d at 1169 (applying the *Strickland* test to post-conviction counsel). Because of this "very high" standard, we continued, it is "the court's duty ... to require some factual basis that the standard will be satisfied before appointing an attorney to investigate the claims." *Mills*, 163 P.3d at 1134.

In my view, the majority has failed to perform this "duty" to satisfy itself that the "very high" standard of *Strickland* could be met in this case because it finds a colorable claim of ineffective assistance of counsel without seriously examining the particular sentencing problem we found in *Nguyen*, which involved only a conviction of *attempted* second degree assault. Thus, the majority erroneously finds a colorable claim of ineffective assistance without determining that *Nguyen* is truly applicable to Close's case. *Cf. People v. Kibel*, 701 P.2d 37, 43 (Colo. 1985) (collecting cases for the proposition that a defendant cannot challenge a sentencing scheme unless it is actually applied to him or her).

## II.

The majority concludes that *Nguyen* is "applicable" to Close's case based on the fact that the defendant in *Nguyen* and Close were sentenced under the same statute. Maj. op. at 1021. Yet its examination of the sentencing statute stops there. While it is true that both Close and the defendant in *Nguyen* were sentenced under the same statute, the statute as it existed at the time covered both *attempted* and *completed* second degree assault. We found an equal protection violation in the application of the former, but not the latter. Because Close was convicted of completed assault, *Nguyen* does not apply to Close's case.

---

7. Close's Rule 35(c) claim was filed on March 5, 2003, more than three years after his conviction became final on direct appellate review on Sep-

tember 9, 1994. *See* § 16–5–402(1), C.R.S. (2007) (setting three-year statute of limitations).

In *Nguyen*, the defendant fired a gun in the direction of three boys and struck only one of them. 900 P.2d at 38. A jury found him guilty of attempted manslaughter and three counts of second degree assault—two of which were convictions for attempted second degree assault on the two boys who escaped unscathed. *Id.* At the time, the statutory sentencing scheme applicable to crimes of violence imposed a range of five to sixteen years' imprisonment for attempted second degree assault, but only two to eight years for attempted first degree assault. *Id.* at 40. Thus, attempted second degree assault was punished more severely than the more serious crime of attempted first degree assault. We held this result to be a violation of equal protection, and struck the sentencing scheme as it applied to attempted second degree assault. *Id.* at 42 ("[T]he appropriate cure for the constitutional infirmity of section 18–3–203 is to strike the crime of violence sentencing under subsection 2(c) as it applies to *attempted* second degree assault.") (emphasis added).

Importantly, although the defendant in *Nguyen* was convicted of three counts of second degree assault, he did not appeal his conviction for *completed* second degree assault against the boy who was actually hit by a bullet he fired. Indeed, this court made clear that it was reviewing only the trial court's decision to vacate "Nguyen's two convictions for *attempted* second degree assault" against the two boys who were not hit by bullets or otherwise injured. *Nguyen*, 900 P.2d at 39 (emphasis added); *see also id.* at 38 ("The other two boys were not injured."). In sum, *completed* second degree assault was never at issue in *Nguyen*.

Close's conviction for second degree assault was based on a completed, not merely an attempted, crime. Close conceded to police, who testified at trial, that he had a stick with him at the time of the attack, and he admitted participating in the assault on the Japanese students. Thomas Stevens, one of the members of Close's group, testified that he saw Close strike "two or three" of the Japanese students with a broom handle, swinging it as though it were a "golf club" or "baseball bat," and that the broom handle broke from Close's force in "swinging it at a student." Stevens further testified that Close was swinging at "legs, back, head, anywhere," for "approximately three to five minutes" and that "the Japanese were getting seriously hurt." Stevens then testified that when the group returned to Close's house, Close told his mother that "[w]e just got in a fight with some Japs and beat their ass." Further, one of the victims, Tsuyoshi Yamashita, specifically testified that Close had struck him.

Additionally, the jury in Close's case received a complicity instruction, which states that a person is guilty of an offense committed by another person if he is a complicitor. Complicity is not a substantive offense, but rather a legal theory under which a defendant becomes accountable for a criminal offense committed by another. *People v. Wheeler*, 772 P.2d 101, 103 (Colo.1989); *see also* § 18–1–603, C.R.S. (2007) ("A person is legally accountable as *principal* for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.") (emphasis added). At a minimum then, Close was convicted of completed assault under a complicity theory because all six victims testified at trial that they were physically attacked by members of Close's group. In sum, Close was convicted of completed second degree assault, either because he had personally committed it or because a member of his group had committed it and he was deemed to be the principal on a complicity theory.

The majority's reasoning misses the critical point that *Nguyen* involved *attempted* second degree assault, *see Nguyen*, 900 P.2d at 39 (reviewing Nguyen's "two convictions for attempted second degree assault"), whereas Close's case involves *completed* second degree assault. The language of the second degree assault statute at issue in *Nguyen* and this case encompassed both attempted and completed assault. *See* § 18–3–203(1), C.R.S. (1995) ("A person commits the crime of assault in the second degree if ... [w]ith intent to cause bodily injury to another

person, he *causes* or *attempts to cause* such injury to any person by means of a deadly weapon[.]").[8] *Nguyen* held only that the statute violated equal protection as applied to the class of persons convicted of the former—i.e., attempted second degree assault. 900 P.2d at 40. The majority glosses over this important distinction by stating simply that the defendant in *Nguyen* and Close were both sentenced under the same statute "that was struck down in *Nguyen.*" Maj. op. at 1021. But we did not "str[ike] down" the statute in *Nguyen;* we struck down a particular application of the statute—that is, to attempted assault-which is not involved here. *See* 900 P.2d at 42 (invalidating the statute's application "to attempted second degree assault"). The majority thus concludes that Close has stated a colorable claim of ineffective assistance based upon only a superficial finding of "applicability."

If the majority were to examine the sentencing problem at issue in *Nguyen* more closely, it would conclude that Close's sentence presents no equal protection problem. The appropriate comparison at issue here is between completed second degree assault and completed first degree assault. *See Nguyen,* 900 P.2d at 40 (comparing *attempted* second degree assault with *attempted* first degree assault). At the time of Close's conviction, completed second degree assault carried a sentencing range of five to sixteen years' imprisonment, and completed first degree assault carried a range of ten to thirty-two years. *See* § 18–1–105(1)(a)(IV) (specifying sentencing ranges); § 18–3–202, C.R.S. (1995) (defining completed assault-1 as a class-three felony); § 18–3–203, C.R.S. (1995) (defining completed assault-2 as a class-four felony); § 16–11–309(1), C.R.S. (1995) (increasing sentencing ranges for crimes of violence). Therefore, because completed second degree assault was punished less severely than completed first degree assault, no equal protection problem would arise—either under the reasoning of *Nguyen,*

or the case upon which *Nguyen* relied, *People v. Bramlett,* 194 Colo. 205, 573 P.2d 94 (1977). *See* maj. op. at 1021 (citing *Bramlett* ).

At the very least, the majority should remand this case for the trial court to consider whether Close was convicted of completed or attempted second degree assault. Instead, it dismisses this issue in a footnote, stating that it is impossible to determine whether Close was convicted of completed second degree assault or attempted second degree assault because the verdict is "ambiguous." *See* maj. op. at 1022 n. 5. Yet the same purported ambiguity did not hamper our analysis in *Nguyen.* To the contrary, we determined that a completed assault occurs when a victim is actually injured. Thus, we described two of the second degree assault convictions at issue in the case as *attempted* assault convictions because they involved the two uninjured victims. *Nguyen,* 900 P.2d at 38–39; *see also* § 18–3–203(1), C.R.S. (1995) (distinguishing between actually "caus[ing] bodily injury" and only "attempt[ing] to cause such injury"). And, as noted above, the defendant in *Nguyen* did not appeal his conviction for completed assault. The majority's refusal to distinguish between completed and attempted assault in this case is thus directly contradicted by the analysis we performed in *Nguyen.*

In Close's case, it is undisputed that all six victims were actually injured. As noted above, Close was convicted of six counts of completed second degree assault as a complicitor. Indeed, in his previous Rule 35(c) motion filed on July 1, 1996, Close did not dispute that his six assault convictions were for completed assault; instead, he argued that he should not be held responsible under a complicity theory for the completed assaults that he did not personally commit. In that motion, Close claimed that the complicity instruction in his case was unconstitutional. He admitted that "six individuals were assaulted" and that "each assault appeared to

---

**8.** The present version of section 18–3–203(1)(b) has eliminated "attempt" from the definition of second degree assault, and now provides that a defendant is guilty of second degree assault if "[w]ith intent to cause bodily injury to another person, he or she *causes* such injury to any

person by means of a deadly weapon." § 18–3–203(1)(b), C.R.S. (2007) (emphasis added). Thus, under the present legislative scheme, only completed second degree assault is sentenced under the crime of violence statute.

be committed by a single individual." He contended, however, that "it is not at all clear that the evidence supports Mr. Close's guilty [sic] of six counts of assault as a complicitor." Close made the same argument in his motion to reconsider the trial court's order denying his Rule 35(c) claim. The court of appeals in *Close II* rejected Close's challenge to the complicity instruction in his case. 22 P.3d 933, 936 (Colo.App.2000). We granted Close's certiorari petition with regard to the limited proportionality question, but we denied his petition regarding complicity.[9] It is this petition that ultimately led to our opinion in *Close III*, 48 P.3d 528 (Colo.2002).

In sum, in his earlier Rule 35(c) motion, Close admitted that he was convicted of completed assaults; in fact, his *entire challenge* to his convictions under a complicity theory was based on that fact. Close's counsel therefore did not raise an equal protection problem based on attempted assault convictions during the *Close III* proceedings not because, as the majority posits, she was ineffective, maj. op. at 1022, but because it had been conceded in Close's challenge to the complicity instruction that he was convicted of six completed assaults.[10]

It was not until his complicity arguments had failed that Close argued his assault convictions violated equal protection principles, as articulated by *Nguyen*, in the Rule 35(c) motion we consider today, which was filed on March 5, 2003. Even at this point, however, Close never contended that he had committed no completed assaults. In fact, he admitted in his Rule 35(c) motion that he personally assaulted two or three of the victims:

The evidence at trial did provide that the victims were assaulted by the defendants. They all had been assaulted. That is not in question. What this argument is based on is that each defendant only assaulted two or three victims two or three times.... Evidence shows *the defendant only assaulted two or three of the victims.* [Emphasis added.]

Despite Close's admission that he committed at least "two or three" completed assaults in the very motion giving rise to our opinion today, the majority finds the jury's verdict to be ambiguous with respect *to all six second degree assault convictions.* Maj. op. at 1022 n. 5. Under the majority's decision, then, all six of Close's convictions are considered to be convictions for attempted assault even though he has admitted that he actually assaulted "two or three of the victims." The rule of lenity upon which the majority relies, maj. op. at 1022 n. 5, cannot be read to justify ignoring the facts in the record before us. That Close himself distinguished between the assaults he actually committed and the ones he committed as a complicitor further erodes the majority's argument that it is impossible to determine whether he was convicted of completed or attempted assault. At bottom, the majority's cursory examination of the equal protection problem identified in *Nguyen* leads it to find a colorable claim of ineffective assistance where no equal protection violation exists.[11]

### III.

For the foregoing reasons, I would affirm the opinion of the court of appeals finding Close's claim under Rule 35(c) to be time-

---

**9.** We denied certiorari review on the following question and its subparts:

> 2. Did the erroneous jury instruction on complicity deprive Close of his state and federal constitutional rights to trial by jury and due process of law?
> a. Did the court of appeals apply the wrong standard of review in analyzing Close's claim of constitutional error?
> b. Should this Court reconsider the requirements of complicitor liability in the wake of *Apprendi v. New Jersey*, 530 U.S. 466[, 120 S.Ct. 2348, 147 L.Ed.2d 435] (2000) and *Jones v. United States*, 526 U.S. 227[, 119 S.Ct. 1215, 143 L.Ed.2d 311] (1999)?

**10.** In his May 29, 2001 Rule 35(a) motion, Close challenged the constitutionality of the complicity instruction a third time, admitting that "The Juries [sic] convictions were based on, [sic] an assault was committed against six Japanese students and the defendant was one of the people who did it."

**11.** I would also find that Close's argument that his Rule 35(b) motion is timely is foreclosed by our decision in *People v. Akins*, 662 P.2d 486 (Colo.1983), where we held that the 120-day time limit for filing a sentence reduction motion under Rule 35(b) is not re-triggered by post-conviction review under Rule 35(c).

barred, and its conclusion that Close cannot be relieved of Rule 35(c)'s time bar because he has failed to demonstrate a colorable claim for ineffective assistance of counsel. I therefore respectfully dissent from the majority's opinion. I am authorized to state that JUSTICE RICE joins in this dissent.