24CA1783 Peo v Castro 04-30-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1783
Arapahoe County District Court No. 21CR113
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Paul Castro,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney
General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Paul Castro, Pro Se

¶ 1    Defendant, Paul Castro, appeals the postconviction court's order denying his pro se Crim. P. 35(c) petitions for postconviction relief without appointing counsel or holding an evidentiary hearing. We affirm.

## I.    Background

¶ 2    According to the probable cause affidavit, Castro responded to an online advertisement to obtain the sexual services of two females.  He subsequently engaged in a detailed text message conversation with a person he believed was a mother offering her thirteen- and fourteen-year-old daughters for prostitution.  The person was in reality an undercover agent.  After a long back and forth between Castro and the undercover agent, Castro agreed to pay her $325 for an hour with the two girls.  Law enforcement arrested Castro once he arrived at a prearranged location.  They seized his cell phone, which contained his text messages to the undercover agent, and found exactly $325 in his pocket.

¶ 3    Castro was charged with criminal attempt to commit patronizing a prostituted child and a habitual sex offender against children sentence enhancer.  Following the preliminary hearing, Castro retained different counsel and entered into a plea agreement

1

in which he pleaded guilty to the added counts of child abuse and sexual exploitation of a child. In exchange, the People dismissed the original charges. In the plea agreement, Castro stipulated to a sentence of eight years in the custody of the Department of Corrections (DOC) for the child abuse conviction and a consecutive twenty years of sex offender intensive supervision probation (SOISP) for the sexual exploitation of a child conviction.

¶ 4    The trial court accepted the plea and, on December 20, 2021, sentenced Castro consistent with the plea agreement. Castro didn't directly appeal his conviction or sentence.

¶ 5    In March 2023, Castro filed a postconviction petition directly with this court, and the appeal was ultimately dismissed for lack of a final order. Before that case was dismissed, in June 2023, Castro filed the same postconviction petition in the district court (first postconviction petition).

¶ 6    In the first postconviction petition, Castro alleged that his counsel was ineffective and that his guilty plea was involuntary. He also asked the postconviction court to reconsider his sentence due to "the appeal waiver being declared unconstitutional." Because this court had not yet dismissed Castro's March 2023 case when he

filed his first postconviction petition in the district court, the postconviction court didn't act on that petition. In May 2024, Castro filed a second postconviction petition reminding the court that he had previously filed the first postconviction petition and adding a request for proportionality review of his sentence.

¶ 7 The postconviction court considered both of Castro's postconviction petitions together and, in a detailed written order, denied them without holding an evidentiary hearing or appointing counsel, concluding that all his contentions lacked merit.

## II. Issues on Appeal

¶ 8 On appeal, Castro contends that the postconviction court erred by (1) denying his ineffective assistance of counsel claims without a hearing; (2) rejecting his claim that his plea was involuntary; (3) concluding that his sentences weren't grossly disproportionate; (4) denying his request to reconsider his sentence; and (5) not appointing postconviction counsel to represent him. Castro also asserts for the first time on appeal that the prosecutor committed misconduct during the plea process. We address, and reject, each of Castro's contentions below.

## A. Crim. P. 35(c) and Standard of Review

¶ 9 A postconviction court may deny a defendant's Crim. P. 35(c) petition without an evidentiary hearing "only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). Furthermore, if a defendant's pro se Crim. P. 35(c) petition presents at least one potentially meritorious claim and the defendant requested counsel, the postconviction court shall serve a "complete copy" of the petition on the public defender's office, which "shall identify whether any conflict exists, request any additional time needed to investigate, and add any claims the Public Defender finds to have arguable merit." Crim. P. 35(c)(3)(V). Ultimately, if the defendant alleges sufficient facts that, if true, may warrant relief, the court must conduct an evidentiary hearing. *People v. Simpson*, 69 P.3d 79, 81 (Colo. 2003).

¶ 10 We review de novo the district court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Gardner*, 250 P.3d 1262, 1266 (Colo. App. 2010).

## B. Ineffective Assistance of Counsel

¶ 11     Castro contends that his trial counsel were ineffective in three respects: (1) plea counsel misrepresented material facts to him about the plea agreement before he entered into it; (2) both failed to conduct a thorough investigation; and (3) plea counsel failed to investigate a possible entrapment defense. Because Castro failed to adequately allege how these purported deficiencies prejudiced him, the postconviction court properly denied these claims without a hearing.

### 1. Applicable Law

¶ 12     "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino*, 69 P.3d at 76. To succeed on an ineffective assistance of counsel claim, a defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007). A court may deny an ineffective

assistance claim without a hearing if the defendant's allegations fail to satisfy either prong of the *Strickland* test. *Ardolino*, 69 P.3d at 77.

¶ 13     Furthermore, when a defendant pleaded guilty, "the prejudice prong requires the defendant to 'show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *People v. Sifuentes*, 2017 COA 48M, ¶ 20 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To meet this burden, the defendant must establish that rejection of the plea agreement "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

2.     Analysis

¶ 14     First, Castro contends that his plea counsel, was ineffective because she (1) didn't correct Castro's misunderstanding that letters from his family and friends could influence the trial court to impose a lesser sentence than the stipulated sentence and (2) incorrectly told him that the plea agreement wouldn't allow him to petition the court for any postconviction remedies.

¶ 15    Second, Castro contends that his counsel at the preliminary hearing and plea counsel at sentencing failed to conduct a thorough investigation because neither attorney asked the prosecution to disclose a picture that the undercover officer had sent him of the two thirteen- and fourteen-year-old girls.  Castro asserts that the picture would have shown two adult women — not underage girls — whom he had agreed to meet.

¶ 16    Third, Castro contended that plea counsel failed to investigate a possible entrapment defense.

¶ 17    In its order, the postconviction court denied all three claims because, among other reasons, Castro didn't show he was prejudiced by his attorneys' actions or inactions.  Specifically, the postconviction court explained that, for all three claims, Castro didn't assert that, but for counsel's allegedly deficient conduct, he would have rejected the plea agreement and insisted on proceeding to trial.  *See Sifuentes*, ¶ 20.  Therefore, his claims failed on the second prong of *Strickland* — the prejudice prong.  We agree.

¶ 18    Based on our review of both Crim. P. 35(c) petitions, Castro didn't allege that he would have rejected the plea agreement and gone to trial but for counsel's allegedly deficient performance.  *See*

*Sifuentes*, ¶ 20.  The closest he came to doing so was in his second petition that stated as follows:

> Petitioner asserts that a more thorough investigation by either attorney *might have* led to a recommendation to the defendant to reject the proposed plea agreement and instead hold out for a better deal or put the Government to its' [sic] proof at trial.  And had the evidence been produced, *perhaps* Mr. Castro would have followed such advice.

(Emphasis added.)

¶ 19     This, however, isn't an allegation that had counsel properly advised Castro or conducted a more thorough investigation, there is a reasonable probability Castro would have rejected the plea and proceeded to trial (or held out and received a more favorable plea offer).  Instead, it's a speculative and conclusory assertion of prejudice.  Indeed, Castro's assertion requires two inferences — that plea counsel would have advised Castro to reject the plea agreement and that Castro would have followed that advice — as the allegations themselves postulate that counsel "might have" recommended rejecting the plea and, had counsel done so, then "perhaps" Castro would have heeded such advice.

¶ 20　Although a "reasonable probability" that Castro would have rejected the plea agreement is "a probability sufficient to undermine confidence in the outcome and is a standard 'somewhat lower' than a preponderance of the evidence," Castro's equivocal language doesn't meet this standard. *Id.* (citations omitted); *see also People v. Lopez*, 2025 COA 73, ¶ 24 (denying the defendant's ineffective assistance of counsel claim when, at most, he asserted that had plea counsel conducted a more thorough investigation, it "would have allowed him to make a 'knowing and intelligent' decision about *whether* to plead guilty").

¶ 21　Although Castro asserts in his reply brief that, but for his plea counsel's allegedly deficient performance, he would have rejected the plea agreement and gone to trial, such argument is too late. *See Lopez*, ¶ 24; *see also People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion . . . are not properly before this court for review.").

¶ 22　Accordingly, because Castro failed to allege the prejudice prong of *Strickland* in his petitions below, the postconviction court properly denied his ineffective assistance of counsel claims without a hearing. *See Ardolino*, 69 P.3d at 77.

## C. Voluntariness of Plea

¶ 23     Next Castro contends that his plea wasn't voluntary.

¶ 24     Castro contends that the record, including the plea hearing transcript, shows that he was hesitant about accepting the plea and that the trial court never questioned him about an appeal waiver. Therefore, he argues, he didn't fully understand the appeal waiver.

¶ 25     But Castro fails to allege facts that, if true, establish that he didn't voluntarily enter into the plea agreement. *See People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005). Although Castro contends that the record shows he "had questions about the plea" and "hesitantly accepted" it, he also recognizes that "the record will show the judge inquired about his hesitancy to respond to the court's questions." Because he admitted that the trial court inquired into his hesitancy, Castro's allegations that he was

10

hesitant in accepting the plea, even if true, are insufficient to establish that his plea wasn't voluntary.[1]

¶ 26     Castro also contended in his postconviction petitions that his plea wasn't voluntary because the plea agreement contained an invalid appeal waiver.  But Castro hasn't reasserted that claim on appeal, so it has been abandoned.  *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).  And to the extent that Castro contended he accepted the plea agreement with an appeal waiver due to ineffective assistance of counsel, he has also abandoned this claim.  *See id.*

¶ 27     Accordingly, the postconviction court properly denied without a hearing Castro's claim that his plea wasn't voluntary.

### D.     Proportionality Review

¶ 28     We next address Castro's request for a proportionality review.

---

[1] We note that we're unable to review the plea hearing transcript because Castro didn't designate it as part of the record on appeal. *See People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) (explaining that courts can't review any facts not contained in the record); *see also People v. Duran*, 2015 COA 141, ¶ 12 ("If an appellant intends to urge on appeal that a finding or conclusion is unsupported by or contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion.").

## 1.     Applicable Law

¶ 29     A request for a proportionality review is cognizable under Crim. P. 35(c).  *People v. Moore-El*, 160 P.3d 393, 395 (Colo. App. 2007).  "'The Eighth Amendment does not require strict proportionality between crime and sentence'; instead, 'it forbids only extreme sentences that are "grossly disproportionate" to the crime.'"  *Wells-Yates v. People*, 2019 CO 90M, ¶ 5 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

¶ 30     "It is 'exceedingly rare' for a sentence to be deemed so extreme that it is grossly disproportionate to the crime."  *Id.* (quoting *Harmelin*, 501 U.S. at 1001).  Proportionality review is most commonly applied to cases when the defendant's sentence exceeds the presumptive sentencing range pursuant to the habitual criminal statute.  *See, e.g., id.* at ¶ 3; *Rutter v. People*, 2015 CO 71, ¶ 22; *People v. Session*, 2020 COA 158, ¶ 41.

¶ 31     Our proportionality review involves two steps: (1) an "abbreviated proportionality review" and (2) an "extended proportionality review."  *Wells-Yates*, ¶ 10.  The abbreviated proportionality review compares the gravity or seriousness of the offense to the harshness of the penalty.  *Id.* at ¶ 11.

¶ 32    Certain crimes have been deemed per se grave or serious, and for those offenses, courts may skip the first part of the abbreviated proportionality review and proceed directly to the assessment of the harshness of the penalty. *Id.* at ¶ 13. For crimes that aren't per se grave or serious, courts review "the facts and circumstances underlying the offense." *People v. Hargrove*, 2013 COA 165, ¶ 12, *abrogated on other grounds by, Wells-Yates*, ¶¶ 16-17.

¶ 33    In assessing the gravity or seriousness of an offense, courts consider the harm caused or threatened to the victim or society and the culpability of the offender. *Wells-Yates*, ¶ 12. In terms of harm to the victim or society, courts focus on the following factors: (1) whether the offense was of a high magnitude; (2) whether the offense was a lesser included or greater included offense; (3) whether the defendant was the principal or an accessory; and (4) whether the crime was completed or only attempted. *Id.*

¶ 34    If the abbreviated proportionality review doesn't give rise to an inference of gross disproportionality, we need not conduct an extended proportionality review. *Id.* at ¶ 15.

## 2.    Analysis

¶ 35    By requesting a proportionality review, Castro argues that his sentence, although within the presumptive range (albeit at the maximum of the range), was "unfair and harsh." *Cf. People v. McCulloch*, 198 P.3d 1264, 1267-68 (Colo. App. 2008) (holding that by agreeing to a stipulated sentence a defendant doesn't waive his right to challenge the proportionality of that sentence).  The postconviction court determined that neither Castro's eight-year DOC sentence for child abuse nor his twenty-year SOISP sentence for sexual exploitation of a child gave rise to an inference of gross disproportionality.

¶ 36    We agree with the postconviction court's assessment that neither sentence is grossly disproportionate.  To begin, Castro was originally charged with criminal attempt to commit patronizing a prostituted child, in violation of sections 18-7-406(1)(a) and 18-2-101(1), C.R.S. 2025.  He also was charged with a habitual sex offender against children sentencing enhancer.  Combined, these charges carried an indeterminant sentencing range of eighteen years to life in the custody of the DOC.  *See* § 18-1.3-1004(1)(c), C.R.S. 2025 (explaining that a district court must sentence a

habitual sex offender against children to the DOC "for an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life"); § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2025 (providing that class 4 felonies have a presumptive maximum sentence of six years).  By pleading to a stipulated sentence, Castro avoided the prospect of an indeterminate DOC sentence.

¶ 37    Moreover, the presumptive sentencing range for the child abuse charge to which Castro pleaded guilty is two to eight years in the custody of the DOC.  *See* § 18-6-401(7)(a)(IV), C.R.S. 2025; § 18-1.3-401(1)(a)(V.5)(A), (10)(a)(X) (indicating that child abuse is an "extraordinary risk crime" so the maximum presumptive range increases from six years to eight years because it's a class 4 felony). Therefore, Castro's sentence for this conviction was within the presumptive range and not unduly harsh under the circumstances. And we conclude the same as to Castro's sentence to twenty years of SOISP for sexual exploitation of a child, a class 3 felony.  *See* § 18-6-403(3)(c), (5)(a), C.R.S. 2025.

15

¶ 38    In sum, given the gravity of these offenses, Castro's sentences don't raise an inference of gross disproportionality.  We therefore affirm the postconviction court's denial of this claim.

### E.    Remaining Contentions

¶ 39    Finally, we address and reject Castro's three remaining contentions in turn.

¶ 40    First, in his first Crim. P. 35(c) petition, Castro asked the postconviction court to reconsider his sentence to be "more in line on the lower end of the presumptive range[]s for a more fair and equitable judgment."  The postconviction court denied his request for three reasons — (1) he lodged it well beyond the 126-day deadline, *see* Crim. P. 35(b); (2) he stipulated in the plea agreement to the exact sentence he received; and (3) the plea agreement provided that "no reconsideration of sentence [would be] allowed."  The postconviction court thus properly denied Castro's request to reconsider his sentence.

¶ 41    Second, Castro claims that the postconviction court's refusal to appoint him postconviction counsel constituted a denial of his Sixth Amendment right to counsel.  But a defendant doesn't have an automatic right to court-appointed counsel in a Crim. P. 35(c)

proceeding.  *See Close v. People*, 180 P.3d 1015, 1020 (Colo. 2008) ("[A] defendant does not have a constitutional right to counsel in post-conviction proceedings . . . .").  A defendant is entitled to appointed counsel only when their petition cannot be summarily denied under Crim. P. 35(c)(3)(IV).  In other words, a postconviction court must appoint counsel, when requested, if the petition contains at least one claim that isn't subject to summary denial.  *People v. Nozolino*, 2023 COA 39, ¶ 28.  Here, the postconviction court determined that Castro didn't allege adequate legal grounds for relief or facts that, even if true, entitled him to relief.  *See* Crim. P. 35(c)(3)(IV).  And as discussed above, we agree with this conclusion.  Accordingly, the postconviction court didn't err by denying his petitions without appointing counsel for him.

¶ 42     Last, Castro alleges prosecutorial misconduct for the first time on appeal.  Because he didn't raise this issue in his Crim. P. 35(c) petitions to the postconviction court, we don't address it.  *See Goldman*, 923 P.2d at 375.

### III.   Disposition

¶ 43     The order is affirmed.

JUDGE TOW and JUDGE LIPINSKY concur.