The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 14, 2019

## 2019COA166

**No. 16CA1569, *People v. Worosello* — Criminal Procedure — Postconviction Remedies; Criminal Law — Limitation for Collateral Attack Upon Trial Court Judgment; Courts and Court Procedure — Limitations for Persons Under Disability — When a Statute Begins to Run**

A division of the court of appeals considers whether section 13-81-103(1)(a), C.R.S. 2019, tolls the statute of limitations set forth in section 16-5-402(1), C.R.S. 2019, for collateral attacks on convictions. As an issue of first impression, the division concludes that it does not. The division also considers whether the defendant alleged facts that, if true, would constitute justifiable excuse or excusable neglect so as to entitle him to a hearing. The division concludes that he did not.

Because the postconviction court properly denied the defendant's Crim. P. 35(c) motion as untimely, the division affirms.

COLORADO COURT OF APPEALS                                    **2019COA166**

Court of Appeals No. 16CA1569
Douglas County District Court No. 04CR800
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Worosello,

Defendant-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE BROWN
Dailey and Richman, JJ., concur

Announced November 14, 2019

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     In this appeal from the postconviction court's order denying Defendant James Worosello's Crim. P. 35(c) motion, we consider whether section 13-81-103(1)(a), C.R.S. 2019, tolls the statute of limitations set forth in section 16-5-402(1), C.R.S. 2019, for collateral attacks on convictions.  As an issue of first impression, we conclude that it does not.  We also conclude that Worosello failed to allege facts that, if true, would constitute justifiable excuse or excusable neglect.  Because his Crim. P. 35(c) motion was untimely, we affirm.

## I.     Background

¶ 2     In November 2004, the prosecution charged Worosello with two counts of enticement of a child and two counts of contributing to the delinquency of a minor arising from his interactions with two teenage girls at a swimming pool.

¶ 3     Because the issue of Worosello's competence is central to this appeal, we set forth the dates and results of the competency evaluations, hearings, and determinations in some detail.

¶ 4     In December 2004, Worosello underwent a private mental health evaluation, which determined he was not competent to proceed.  The prosecution requested and was granted an additional

1

evaluation through the state hospital system.  The state hospital evaluators determined that Worosello was competent.

¶ 5     In June 2005, the district court held a competency hearing.  It found that Worosello "suffer[ed] from mental defect" but that he was competent to proceed.

¶ 6     On August 1, 2005, Worosello pleaded guilty to one count of enticement of a child, a class 4 felony.  At that time, the district court again found that Worosello was competent considering its observations of Worosello during the plea hearing and its review of the court file.  The plea agreement included a stipulation to Sex Offender Intensive Supervision Probation (SOISP).  The matter was set over for sentencing so that probation could complete a presentence investigation report for Worosello.

¶ 7     On October 31, 2005, Worosello's attorney filed a motion for a new competency evaluation, a motion to withdraw Worosello's guilty plea, and a motion to withdraw as Worosello's attorney.  After a hearing, the district court ordered another competency evaluation to be completed at the state hospital but reserved ruling on the other motions.

¶ 8     On April 3, 2006, upon receipt of the new competency evaluation, the district court made a final determination that Worosello was competent to proceed.  Worosello's attorney did not object.  Worosello's attorney then withdrew his motion to withdraw Worosello's guilty plea, as well as his motion to withdraw as Worosello's attorney.  Worosello explicitly agreed on the record to the withdrawal of both motions.

¶ 9     On May 15, 2006, the district court sentenced Worosello to ten years to life in SOISP.

¶ 10    On July 20, 2006, the prosecution moved to revoke Worosello's probation.  Worosello was arrested and the court appointed a public defender to represent him.  The public defender expressed interest in filing another motion to withdraw Worosello's guilty plea, but never did.

¶ 11    On October 12, 2006, following a contested probation revocation hearing, the district court found that Worosello had violated the terms and conditions of his probation.  The matter was set over for sentencing, but the day before the sentencing hearing, Worosello retained a private attorney to "attempt to withdraw the guilty plea."  Even though the district court expressed concern over

the "11th hour feel to this maneuvering," it allowed the public defender to withdraw and allowed the new attorney to enter his appearance. The district court continued the case for a sentencing hearing two days later.

¶ 12    On November 30, 2006, at the rescheduled sentencing hearing, Worosello's new private attorney did not seek to withdraw the plea, and the district court sentenced Worosello to two years to life in the custody of the Department of Corrections.

¶ 13    Almost ten years later, on December 16, 2015, Worosello filed a motion entitled "Motion to Vacate Conviction Pursuant to Rule 35(c)." Worosello attached documentation from a doctor who opined that Worosello was incompetent when he entered into the plea agreement in this case. The postconviction court denied Worosello's Crim. P. 35(c) motion as untimely. The court also rejected Worosello's claims on their merits.

## II.    Analysis

¶ 14    Worosello first contends that his motion is timely because he labored under a disability that tolled the statute of limitations on his filing of a Crim. P. 35(c) motion. Alternatively, he argues that justifiable excuse or excusable neglect excuses the late filing.

¶ 15    As to the merits, Worosello argues that plea counsel had a conflict of interest affecting his representation, that plea counsel provided ineffective assistance of counsel, and that his plea was not knowing, intelligent, and voluntary.

¶ 16    We agree with the postconviction court that Worosello's motion is untimely.  Accordingly, we do not address the merits of Worosello's collateral attack on his conviction.

### A.    The Statute of Limitations Was Not Tolled

¶ 17    Worosello first contends that his motion is timely because he labors under a disability such that section 13-81-103(1)(a) tolled the three-year period within which he had to file his Rule 35(c) motion under section 16-5-402(1).  We disagree.

### 1.    Standard of Review and Generally Applicable Legal Principles

¶ 18    Whether one statute may toll the time limitation in another statute presents a matter of statutory interpretation, which we review de novo.  *See Kazadi v. People*, 2012 CO 73, ¶ 11.

¶ 19    We interpret the plain language of a statute to give full effect to the intent of the General Assembly.  *People v. Griego*, 2018 CO 5, ¶ 25.  When the statutory language is clear, we apply the plain and ordinary meaning of the provision.  *Id.*  In doing so, we give

5

consistent, harmonious, and sensible effect to each part of the statute, rendering no words or phrases superfluous. *Id.*

## 2. Discussion

¶ 20 A defendant may move to have his judgment of conviction set aside on various grounds. *See* Crim. P. 35(c). A Crim. P. 35(c) motion must comply with the time limits set forth in section 16-5-402. Crim. P. 35(c)(3)(I); *People v. Wiedemer*, 852 P.2d 424, 427 (Colo. 1993). That statute provides that "no person who has been convicted as an adult . . . under a criminal statute of this or any other state of the United States shall collaterally attack the validity of that conviction . . . unless such attack is commenced within the applicable time period . . . ." § 16-5-402(1). Because Worosello pleaded guilty to a class 4 felony, he had three years from the date of sentencing to challenge the validity of his conviction. *Id.*[1] Worosello was sentenced in 2006. Therefore, his opportunity to collaterally attack the validity of his conviction under Crim. P. 35(c) expired in 2009.

---

[1] Worosello did not directly appeal his conviction or sentence.

6

¶ 21    Section 16-5-402 also sets forth the "only exceptions" to its

time limits:

> In recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders, the *only exceptions* to the time limitations specified in subsection (1) of this section are: (a) [a] case in which the court entering judgment of conviction or entering adjudication did not have jurisdiction over the subject matter of the alleged offense; (b) [a] case in which the court entering judgment of conviction or entering adjudication did not have jurisdiction over the person of the defendant or juvenile; (c) [w]here the court hearing the collateral attack finds by a preponderance of the evidence that the failure to seek relief within the applicable time period was caused by an adjudication of incompetence or by commitment of the defendant or juvenile to an institution for treatment as a person with a mental health disorder; or (d) [w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect.

§ 16-5-402(2) (emphasis added).

¶ 22    But Worosello argues that, because he "has been disabled his

entire life," the "time limitations of section 16-5-402 . . . should be

7

tolled" pursuant to section 13-81-103(1)(a). That statute provides as follows:

> When in any of the statutes of the state of Colorado a limitation is fixed upon the time within which a right of action, right of redemption, or any other right may be asserted either affirmatively or by way of defense or an action, suit, or proceeding based thereon may be brought, commenced, maintained, or prosecuted and the true owner of said right is a person under disability at the time such right accrues, then . . . [i]f such person under disability is represented by a legal representative at the time the right accrues, or if a legal representative is appointed for such person under disability at any time after the right accrues and prior to the termination of such disability, the applicable statute of limitations shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability. Such legal representative, or his successor in trust, in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though the two-year period expires after the expiration of the period fixed by the applicable statute of limitations.

§ 13-81-103(1)(a). Worosello contends that, because he did not have and still does not have an appointed legal representative, the statute of limitations has not run against him.

8

¶ 23    We are not aware of any authority that has applied this general tolling statute to the limitations period that governs Crim. P. 35(c) motions. For at least four reasons, we decline to so apply it today.[2]

¶ 24    First, by its plain language, section 16-5-402(2) clearly and unambiguously identifies the "only exceptions" to the time limitations in section 16-5-402(1), and having a disability as recognized by section 13-81-103(1)(a) is not one of them. The General Assembly's use of the word "only" to describe the exceptions reflects its intent to create an exclusive list of such exceptions. *People ex rel. N.R.*, 139 P.3d 671, 683 (Colo. 2006) ("The word 'only' in the statute represents an unequivocal statement that this list is meant to be exhaustive.").

¶ 25    Second, although section 16-5-402(2) does include an exception that deals explicitly with competence, it does not mirror

---

[2] As another division previously noted, "there is no authority, whether statute, rule, or appellate opinion, that recognizes a 'tolling' of the time limit contained in section 16-5-402(1)." *People v. Stovall*, 2012 COA 7M, ¶ 33 n.3. *Cf. People v. Ambos*, 51 P.3d 1070, 1071-72 (Colo. App. 2002) ("[T]he timely commencement of a collateral attack fails to toll the limitations period with respect to additional postconviction claims not contained in the timely filed motion.").

section 13-81-103(1)(a).  Instead, it applies where the court hearing the Rule 35(c) motion "finds by a preponderance of the evidence that the failure to seek relief within the applicable time period was caused by an adjudication of incompetence or by commitment of the defendant . . . to an institution for treatment as a person with a mental health disorder." § 16-5-402(2)(c).[3]  "Under the rule of interpretation *expressio unius exclusio alterius,* the inclusion of certain items implies the exclusion of others."  *Beeghly v. Mack,* 20 P.3d 610, 613 (Colo. 2001).  By specifying one circumstance where incompetence excepts a Rule 35(c) motion from the time limits in section 16-5-402(1), the General Assembly intended that no other competence-related exception exist.

¶ 26　　Third, section 13-81-103(1)(a) was enacted before section 16-5-402.  *Dawson v. Reider,* 872 P.2d 212, 214 (Colo. 1994) ("[A] later statute is given effect over an earlier statute.").  We presume the General Assembly was aware of the general tolling provisions of section 13-81-103 when it created the time limits for collaterally

---

[3] Notably, Worosello does not argue that this exception applies, nor did he allege in his Crim. P. 35(c) motion that he had been adjudicated incompetent or committed due to a mental health disorder.

attacking convictions set forth in section 16-5-402. *Leonard v. McMorris*, 63 P.3d 323, 331 (Colo. 2003) ("We presume that the General Assembly knows the pre-existing law when it adopts new legislation or makes amendments to prior acts."). Had it intended the general tolling provision of section 13-81-103(1) to apply to the time limits in section 16-5-402(1), it would have said so. Instead, it created an expressly exhaustive list of exceptions that does not include section 13-81-103(1)(a). § 16-5-402(2).

¶ 27    Fourth, section 16-5-402 applies specifically to collateral attacks on conviction, while section 13-81-103 applies generally. When a general statutory provision conflicts with a specific provision and the conflict is irreconcilable, the specific provision prevails as an exception to the general provision. *See* § 2-4-205, C.R.S. 2019;[4] *Martin v. People*, 27 P.3d 846, 852 (Colo. 2001). As the Colorado Supreme Court explained,

> The reasoning behind this principle of statutory construction is a simple matter of logic. A general provision, by definition, covers a larger area of the law. A specific provision,

---

[4] This is true unless the general provision is adopted later and the manifest intent is that the general provision prevail. *See* § 2-4-205, C.R.S. 2019. As noted, section 16-5-402 was enacted after section 13-81-103.

> on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance. . . . If general provisions prevailed over specific ones, then specific provisions would cease to function entirely.

*Id.*

¶ 28    For this reason, Worosello's reliance on *Southard v. Miles*, 714 P.2d 891 (Colo. 1986), is misplaced. In *Southard,* the Colorado Supreme Court considered the statute of limitations and statute of repose applicable to a medical malpractice claim. As is relevant here, by its own terms, the statute was tolled during any period in which the person was "under disability," which included a "mental incompetent." *Id.* at 895-96; *see* § 13-80-105(1), C.R.S. 1985. But the statute did not define "mental incompetent" or explain how a person under disability due to mental incompetence should be treated for purposes of the statute of limitations. *Id.* at 896. Accordingly, the court looked to section 13-81-103(1)(a) for guidance. Reading the statutes together, the court concluded that the tolling provisions of section 13-81-103(1) applied to both the statute of limitations and the statute of repose. *Id.* at 897-98.

¶ 29    In doing so, however, the court explained that section 13-81-103(1) "is intended to apply to any statute of limitations in this state . . . *unless there exists a special statute pertinent to the claim that conflicts with the general provisions of section 13-81-103.*"  *Id.* at 897 (emphasis added); *see also id.* at 897 n.8 (discussing § 2-4-205, C.R.S. 1980).  In this case, section 16-5-402 is a special statute pertinent to collateral attacks on criminal convictions, and it conflicts with the general provisions of section 13-81-103(1).  Because a conflict exists, the special statute prevails over the general.  *See* § 2-4-205.

¶ 30    And, unlike the statute in *Southard*, section 16-5-402 does not recognize an exception to its time limitation for a "person under disability."  Instead, it provides an exhaustive list of exceptions, which does not include those addressed by section 13-81-103(1)(a).  And, as noted above, section 16-5-402 was the later-enacted statute.

¶ 31    For these reasons, we agree with the postconviction court that section 13-81-103(1)(a) does not toll the statute of limitations set forth in section 16-5-402(1) for collateral attacks on convictions.

## B.    Worosello Failed to Establish Justifiable Excuse or Excusable Neglect

¶ 32    In the alternative, Worosello argues that his untimely motion should be accepted because his failure to file for relief before the three-year limit expired was due to justifiable excuse or excusable neglect.  Again, we disagree.

### 1.    Standard of Review

¶ 33    The postconviction court denied Worosello's Crim. P. 35(c) motion without a hearing.  Thus, we review de novo whether he alleged facts that, if true, would constitute justifiable excuse or excusable neglect and merit a hearing.  *People v. Chavez-Torres*, 2019 CO 59, ¶ 11 (citing *Close v. People*, 180 P.3d 1015, 1019 (Colo. 2008)).

### 2.    Discussion

¶ 34    A court may deny a Crim. P. 35 motion without a hearing if "the motion, the files, and the record clearly establish that the defendant is not entitled to relief."  *People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007).  Additionally, a "trial court may rely on the plea agreement or the plea hearing transcript in denying [a] Rule

14

35(c) motion without a hearing on timeliness grounds."
*Chavez-Torres*, ¶ 17.

¶ 35　　As set forth above, one exception to the time bar in section 16-5-402(1) is "[w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." § 16-5-402(2)(d).　However, it is well settled that "[a] defendant must allege in a Crim. P. 35 motion facts that, if true, would establish justifiable excuse or excusable neglect for a belated filing." *People v. Clouse*, 74 P.3d 336, 340 (Colo. App. 2002).　If the defendant fails to make this showing, the postconviction court may deny the motion without conducting a hearing. *People v. Salinas*, 55 P.3d 268, 270 (Colo. App. 2002).

¶ 36　　Although section 16-5-402(2)(d) does not define justifiable excuse or excusable neglect, our supreme court has identified a nonexhaustive list of factors for a postconviction court to consider when evaluating whether a defendant has alleged sufficient facts to merit a hearing.　*See Wiedemer*, 852 P.2d at 441-42.　These factors include

(1) whether there are circumstances or outside influences preventing a challenge to a prior conviction and the extent to which the defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of relevant avenues of relief that are available; (2) whether a defendant had any previous need to challenge a conviction and either knew that it was constitutionally infirm or had reason to question its validity; (3) whether a defendant had other means of preventing the government's use of the conviction, so that a post-conviction challenge was previously unnecessary; and (4) whether the passage of time has an effect on the State's ability to defend against the challenge.

*Close*, 180 P.3d at 1019-20 (citing *Wiedemer*, 852 P.2d at 441-42).

¶ 37    Most of Worosello's argument pertains to the first and second *Wiedemer* factors.  In essence, Worosello argues that his "ongoing incompetency," "disability," and "lack of sufficient mental faculties" have resulted in a complete inability to "process the unconstitutionality of his conviction," leading him not to investigate or timely pursue postconviction relief.  Worosello's argument rests primarily on his contentions that he was not competent to proceed when he entered his plea and has not been competent to proceed since.  Thus, couched as justifiable excuse or excusable neglect, Worosello seeks to relitigate his competence.

¶ 38 The record, however, contradicts Worosello's allegations. It shows that Worosello underwent multiple competency evaluations and was found competent to proceed both before he entered his plea and again before he was sentenced. Additionally, neither attorney representing Worosello during the probation revocation proceedings raised the issue of his competence at that time.[5]

¶ 39 And significantly — back in 2005 and 2006 — Worosello's first attorney filed and then withdrew a motion to withdraw his plea before sentencing; Worosello's public defender in the probation revocation proceedings indicated an intent to file a motion to withdraw the plea but never did; and Worosello hired a private attorney for the express purpose of attempting to withdraw the plea but proceeded to sentencing without filing such motion. Thus, the record reflects that Worosello previously had reason to question and took steps to challenge the validity of his plea and, consequently, his conviction.

---

[5] Notably, Worosello does not allege ineffective assistance of counsel as to the public defender or as to private counsel who entered an appearance during the probation revocation proceedings.

¶ 40    As to the third *Wiedemer* factor, Worosello argues that he never had reason to seek to prevent the government's use of his conviction. However, his conviction is why he spent the last decade of his life in the custody of the Department of Corrections.

¶ 41    As to the fourth *Wiedemer* factor, Worosello argues that the passage of years has not limited the prosecution's ability to defend against the challenge in any meaningful way. However, Worosello's Rule 35(c) motion itself established that the prosecution would be adversely affected. It stated that neither of the two teenage girls from the swimming pool, who are now adult women, remembers being offered beer or being touched by Worosello. As the postconviction court correctly stated, "[c]learly the passage of time has not inured to the benefit of the People and would only serve to negatively affect the ability of the People to respond to the challenges now presented by the Defendant."

¶ 42    In the end, we agree with the postconviction court's conclusion that Worosello failed to allege facts sufficient to warrant a hearing on justifiable excuse or excusable neglect.

### III. Conclusion

¶ 43    Because we conclude that Worosello's Crim. P. 35(c) motion was untimely, we do not reach the merits of his claims.  So, we affirm the postconviction court's order denying Worosello's untimely Rule 35(c) motion.

JUDGE DAILEY and JUDGE RICHMAN concur