22CA2105 Peo v Lewis 09-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA2105
Arapahoe County District Court No. 06CR2465
Honorable Ryan J. Stuart, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Malchijah John Lewis,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Malchijah John Lewis, appeals the postconviction court's denial of his Crim. P. 35(a) and 35(c) motion. We affirm.

## I. Background

¶ 2 Lewis was charged in multiple Arapahoe County cases numbered 06CR1794, 06CR2465, 06CR2473, and 07CR3545. Before any of the cases reached a disposition, Lewis filed a motion in 06CR2465 to enforce an alleged global plea offer for which he would have received a thirty-year sentence to the custody of the Department of Corrections (DOC) to run concurrently to "any sentence in Denver and Adams County." The district court denied the motion after a hearing.

¶ 3 Lewis proceeded to trial in 06CR1794 and was convicted of aggravated robbery, conspiracy to commit aggravated robbery, and criminal possession of two or more financial transaction devices. Three counts of possession of a weapon by a previous offender (POWPO) and several habitual counts were severed.

¶ 4 Before trial on the POWPO and habitual counts, Lewis pleaded guilty to one POWPO count and all of the habitual criminal counts in 06CR1794, as well as aggravated robbery in 06CR2465. In exchange, the prosecution dismissed 06CR2473 and 07CR3545.

1

¶ 5     Lewis stipulated to a sixty-four-year DOC sentence in 06CR1794 and a concurrent, aggregate sixty-year DOC sentence in 06CR2465.  In the plea agreement for 06CR2465, the parties agreed that Lewis was "not waiving his right to appeal the court's ruling on his previous motion to enforce plea offer."

¶ 6     In June 2008, the district court sentenced Lewis in accordance with the terms of the plea agreements.

¶ 7     A few weeks later, the district court found Lewis indigent and appointed alternate defense counsel to represent him on appeal. However, no appeal was filed.

¶ 8     In 2012, defense counsel made the postconviction court aware of a motion to reduce Lewis's sentence that counsel had allegedly filed in 2008, which had not yet been ruled on.  The court found that the motion had not been filed in 2008.  It also found that, even if the motion had been filed in 2008, Lewis later abandoned it by failing to request a ruling for nearly four years.

¶ 9     In October 2020, Lewis filed a Crim. P. 35(a) and 35(c) motion, asserting various trial court errors and nine ineffective assistance of counsel claims.  He conceded that his motion was untimely but argued that his failure to timely file was the result of justifiable

excuse or excusable neglect.  The postconviction court denied the motion without a hearing, concluding that it was untimely and lacked adequate allegations of justifiable excuse or excusable neglect.

## II.     Discussion

¶ 10     Lewis contends that the postconviction court erred by denying his motion as untimely because he alleged facts that, if true, constitute justifiable excuse or excusable neglect for the late filing. He claims he is entitled to a hearing on the timeliness of his motion. We disagree.

### A.     Applicable Law and Standard of Review

¶ 11     Although Lewis captioned his motion under both Crim. P. 35(a) and (c), his claims are only cognizable under Rule 35(c).  This is because he makes no claims regarding the legality of his sentences and is instead challenging the constitutionality of his convictions.  *See People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006) ("Motions under Crim. P. 35(c) are the proper postconviction route in which to challenge convictions . . . as unconstitutional."); Crim. P. 35(c)(2)(I) (providing for relief where "the conviction was

obtained . . . in violation of the Constitution or laws of the United States or the constitution or laws of this state").

¶ 12     As pertinent here, a Crim. P. 35(c) motion must be filed within three years of a defendant's conviction.  § 16-5-402(1), C.R.S. 2025 (imposing a three-year time limit for non-class 1 felonies); Crim. P. 35(c)(3)(I).  When, as in this case, the defendant does not directly appeal, conviction "occurs when the trial court enters judgment and sentence is imposed."  *Collier*, 151 P.3d at 671.  But an exception to this time bar exists when the defendant's "failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." § 16-5-402(2)(d).

¶ 13     We review de novo whether the facts alleged in a Crim. P. 35(c) motion, if true, would constitute justifiable excuse or excusable neglect.  *People v. Hinojos*, 2019 CO 60, ¶ 12.  To be entitled to a hearing, a defendant is not required to provide evidentiary support for his allegations but "must allege facts which, if true, would entitle him to relief from the time bar."  *Id.* at ¶ 14.

¶ 14     In determining whether justifiable excuse or excusable neglect exists, the district court must consider "the particular facts of [the]

4

case, so as to give effect to the overriding concern that defendants have a meaningful opportunity to challenge their convictions as required by due process." *Close v. People*, 180 P.3d 1015, 1019 (Colo. 2008). In addressing justifiable excuse or excusable neglect, a district court shall consider the following nonexhaustive list of factors: (1) whether circumstances or outside influences existed that prevented a challenge to the prior conviction; (2) the extent to which a defendant, having reason to question the constitutionality of a conviction, investigated its validity and took advantage of relevant avenues of relief that were available; (3) whether the defendant had any previous need to challenge a conviction and either knew that it was constitutionally infirm or had reason to question its validity; (4) whether the defendant had other means of preventing the government's use of the conviction, so that a postconviction challenge was previously unnecessary; and (5) whether the passage of time affects the prosecution's ability to defend against the challenge. *People v. Wiedemer*, 852 P.2d 424, 441-42 (Colo. 1993).

¶ 15    A Crim. P. 35(c) motion may be denied without a hearing when the motion, files, and record clearly establish that the defendant's

allegations do not warrant relief. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

## B. Analysis

¶ 16 Lewis concedes that his motion was untimely. Indeed, he filed it in October 2020, more than nine years after the June 2011 deadline to do so expired. He asserts, however, that the late filing was the result of justifiable excuse or excusable neglect under *Wiedemer*.

### 1. Circumstances or Influences Preventing an Earlier Challenge

¶ 17 First, Lewis asserts that counsel's ineffective assistance and alleged misleading representations prevented a timely challenge to his convictions. Lewis specifically claims that counsel led him to believe that a direct appeal was being pursued, even though counsel never filed a notice of appeal. And because he was under the assumption that an appeal was pending, he believed a postconviction motion was not yet ripe. In his motion, Lewis claimed to have contacted defense counsel regarding the status of his appeal, but "it wasn't until years later" or "recently" that he discovered that counsel had never filed an appeal. Lewis asserted that he had no contact with counsel until early 2011, when counsel

told Lewis that he would "follow up on" the appeal. And he asserted that counsel had never informed him that counsel had filed the motion to reduce his sentence.

¶ 18    These allegations are insufficient to establish that Lewis faced circumstances or influences that prevented him from filing an earlier challenge. Although Lewis says he did not discover that an appeal had not been filed "until years later" or "recently," he does not specify when he found out. Nor does he explain whether he made additional attempts to contact defense counsel about the appeal in the nine years between their last contact in 2011 and the date he filed the instant motion. He asserts that an average appeal takes 1,077 days to resolve, but he fails to explain why, if that is true, it was reasonable for him to wait 4,515 days — more than nine years — before filing his Crim. P. 35(c) motion. Under the circumstances here, and given his vague and conclusory allegations about when he learned of his counsel's failure to file an appeal, we agree with the People that it was "wholly unreasonable" for Lewis to believe that a direct appeal had been pending since at least 2011.

¶ 19    Somewhat inconsistently, Lewis also alleged that after he discovered that no direct appeal had been filed, he was "repeatedly

told that his claims were time barred." Nonetheless, he waited to file his motion for some undefined period until he learned about the excusable neglect exception, apparently sometime around 2018. But none of that delay falls under the justifiable excuse or excusable neglect exception either. *See People v. McPherson*, 53 P.3d 679, 682 (Colo. App. 2001) (noting that a defendant's "indigence, ignorance of the law, and lack of legal counsel do not amount to justifiable excuse or excusable neglect for an untimely filed collateral attack"); *People v. Slusher*, 43 P.3d 647, 651 (Colo. App. 2001) ("[R]ecent discovery of a legal basis for a collateral attack on a conviction does not constitute excusable neglect where the defendant has not otherwise demonstrated some unavoidable hindrance that would cause a reasonably prudent person to neglect to pursue timely collateral relief.").

¶ 20 While ineffective assistance of counsel can, under certain circumstances, constitute justifiable excuse or excusable neglect, *see Close*, 180 P.3d at 1019, Lewis has not alleged sufficiently specific facts related to counsel's conduct to justify why he waited twelve years after his conviction became final to file a Crim. P. 35(c) motion.

¶ 21    We are also not persuaded that Lewis's alleged mental health issues prevented a timely challenge to his convictions. He asserts that he "suffers from mental health issues," has "some mental disabilities or limits," and is "low-functioning." However, a defendant's "limited education and low level of intelligence [do] not constitute justifiable excuse or excusable neglect." *People v. Cordova*, 199 P.3d 1, 5 (Colo. App. 2007). Lewis attempts to distinguish *Cordova* on the basis that *Cordova* considered the effect a defendant's mental abilities had on his obligation to file his own timely postconviction motion. Lewis's case, in contrast, involves his reliance on defense counsel's alleged misrepresentations about his direct appeal. But both cases involve an untimely Crim. P. 35(c) motion and an attempt to establish justifiable excuse or excusable neglect based on the defendant's mental capacity. True, Lewis's claim was that his mental abilities caused him to believe that counsel had filed a direct appeal, and Cordova's claim was that his mental capacity affected his ability to understand the consequences of his pleas and the application of the time bar to limit his collateral attack of those convictions. But this distinction is of no consequence because the basis of both claims is that the

9

defendant's mental capacity affected his ability to timely file a postconviction motion.

¶ 22 Lewis further argues that, although not technically appointed as postconviction counsel, defense counsel assumed the responsibilities of postconviction counsel when he filed a sentence reduction motion. Had that motion included a Crim. P. 35(c) claim, it would have only been roughly one year late. But, Lewis says, counsel could not have filed his ineffective assistance claims in that motion due to a conflict of interest. Be that as it may, Lewis does not sufficiently explain why he waited over twelve years from the date of his conviction to file the current motion.

### 2. Reason to Question the Validity of the Conviction and Prior Need to Challenge It

¶ 23 Lewis argues that he had no reason or need to challenge his conviction until he filed the instant motion because he believed his conviction was already being challenged on direct appeal. But, as we explained above, Lewis's belief that his appeal was pending for over twelve years was unreasonable and mostly unaccounted for, and he was on notice that he could file postconviction motions at some point in time earlier than 2020. Moreover, nothing in the

record shows that Lewis was ever notified that a direct appeal had been filed.

### 3. Other Means of Preventing the Government's Use of the Conviction

¶ 24 Relying on *People v. Worosello*, 2019 COA 166, the People argue that "the very fact of [Lewis's] conviction and subsequent incarceration for at least the past 18 years is sufficient reason for him to have sought to prevent the government's use of his conviction by collaterally attacking it earlier." *See id.* at ¶ 40 ("Worosello argues that he never had reason to seek to prevent the government's use of his conviction. However, his conviction is why he spent the last decade of his life in the custody of the Department of Corrections."). Lewis argues that *Worosello* is distinguishable because there, the defendant "never claimed to have been utilizing, or believed he was utilizing, another means of challenging his conviction between being sentenced and filing his postconviction motion."

¶ 25 We agree with the People. While Lewis claims that he believed his cases were on appeal during the twelve years between his sentencing and the filing of his postconviction motion, we have

11

already concluded that this belief was unreasonable. Lewis's 2008 convictions were the very reason he spent those twelve years incarcerated; thus, he had every reason to challenge his conviction at an earlier date. *See id.*

### 4. Prosecution's Ability to Defend the Conviction

¶ 26 Finally, Lewis argues that the passage of time would not "affect the government's ability to respond to the motion, much less answer a direct appeal." He relies on *People v. Baker*, 104 P.3d 893, 897 (Colo. 2005), for the proposition that "[t]he prosecution cannot complain of prejudice from late filing when the district attorney received actual notice of [the defendant's] intent to appeal his conviction."

¶ 27 But *Baker* is distinguishable. *Baker* involved the untimely filing of a direct appeal whereas here, Lewis filed an untimely postconviction motion. Although the prosecutor arguably received notice that Lewis wanted to directly appeal his convictions because his plea agreement included a reservation of his right to appeal the motion to enforce the initial plea offer, the prosecutor did not receive notice that Lewis intended to file a Crim. P. 35(c) motion until 2020 — when he filed the instant motion. Furthermore,

regardless of the allegations related to this single factor, the allegations as a whole were insufficient to support a finding of justifiable excuse or excusable neglect for the untimely motion.

### III. Remaining Arguments

¶ 28 Lewis also contends that this court should "reinstate" his right to a direct appeal without remanding the case for an evidentiary hearing on his postconviction motion. However, as the People point out, this argument is not properly before us. Lewis did not file a direct appeal of his conviction, so there is no appeal to "reinstate," and we therefore do not have jurisdiction to consider whether he has shown justifiable excuse or excusable neglect for missing the C.A.R. 4(b) deadline or whether he has shown good cause for extending the deadline under C.A.R. 26(c). To the contrary, the

only issue that is properly before us is whether the postconviction court correctly denied his Crim. P. 35(c) motion.[1]

¶ 29    Lewis further reasserts his remaining ineffective assistance of counsel claims.  Because we affirm the postconviction court's determination that Lewis did not establish justifiable excuse or excusable neglect for his late-filed Crim. P. 35(c) motion, we do not address the merits of any of his postconviction claims.

## IV.   Disposition

¶ 30    We conclude that the postconviction court did not err by denying Lewis's motion as untimely without holding a hearing.

¶ 31    The order is affirmed.

JUDGE HARRIS and JUDGE PAWAR concur.

---

[1] Although the law was unsettled at the time that Lewis reached his plea agreement with the prosecution, conditional guilty pleas are not permissible in Colorado.  *See Neuhaus v. People*, 2012 CO 65, ¶ 19.  To the extent that Lewis contends that he was induced to plead guilty by the promise that he would have an opportunity to appeal the district court's ruling on his previous motion to enforce the plea offer, he would need to pursue such relief under Crim. P. 35(c)(2)(I).  But that motion would need to be filed before the statutory deadline or, if it was not, Lewis would need to establish justifiable excuse or excusable neglect for his late filing.  *See* § 16-5-402(2)(d), C.R.S. 2025.  As we have already concluded, the postconviction court did not err when it rejected Lewis's explanation for his untimely postconviction filing.