500 P.3d 1110
William J. HUNSAKER, Jr., Petitioner,
v.The PEOPLE of the State of Colorado, Respondent.
Supreme Court Case No. 20SC360 Supreme Court of Colorado.
December 20, 2021
Attorneys for Petitioner: Hunsaker Emmi, P.C., William J. Hunsaker, Arvada, Colorado
Attorneys for Respondent: Philip J. Weiser, Attorney General, Megan C. Rasband, Assistant Attorney General, Denver, Colorado
En Banc
JUSTICE HART delivered the Opinion of the Court.
¶1 After criminal defendants are convicted, Colorado Rule of Criminal Procedure 35 provides them with three types of postconviction remedies. A defendant may seek correction of an illegal sentence "at any time"—even many years after the conviction. Crim. P. 35(a). A defendant may ask the court to reduce a sentence within certain limited timeframes. Crim. P. 35(b). And a defendant may bring other specified types of postconviction challenges to a conviction or sentence but must generally do so within three years of the date of conviction. See Crim. P. 35(c) ; § 16-5-402(1), C.R.S. (2021). The question we are asked to answer here is how Crim P. 35(a), which permits the correction of a sentence "at any time," should interact with Crim. P. 35(c), which has a three-year statute of limitations subject to only a few specific exceptions provided in section 16-5-402(1).
¶2 We have considered this question once before, in Leyva v. People , 184 P.3d 48 (Colo. 2008), but that opinion has been construed by two different divisions of the court of appeals in mutually exclusive ways. One division has found that, under Leyva , correction of an illegal sentence renews the limitations period for all arguments for postconviction relief, entirely restarting the three-year clock. See People v. Baker , 2017 COA 102, ¶¶ 37–42, 461 P.3d 534, 540, rev'd on other grounds , 2019 CO 97M, 452 P.3d 759. In contrast, the division in this case found that, under Leyva , correction of an illegal sentence only renews the Crim P. 35(c) limitations period for arguments "related to how the illegality in the original sentence potentially affected a defendant's original conviction." People v. Hunsaker , 2020 COA 48, ¶ 16, 490 P.3d 688, 692. We must now determine which of these two competing interpretations is correct.
¶3 We reaffirm our conclusion in Leyva that, where a court corrects an illegal sentence, the defendant may thereafter pursue an otherwise time-barred Crim. P. 35(c) motion. However, the corrected sentence only allows defendants to raise arguments addressing how the illegality in their sentence potentially affected the original conviction. In reaching this conclusion, we reaffirm our holding in People v. Hampton , 876 P.2d 1236, 1240 (Colo. 1994) —"the meaning of the word ‘conviction’ in section 16-5-402(1) refers to a conviction after a defendant's appeal has been exhausted"—and we disavow Leyva 's contrary suggestion that a "conviction" does not occur until a sentence is correct.
¶4 In this case, defendant William Hunsaker, Jr., missed the deadline for filing his Crim. P. 35(c) motion. However, his original sentence was illegal, and the district court corrected it. His late filing of a collateral attack related to the illegality in his sentence is thus justifiably excused. We affirm the court of appeals' conclusion that one of Hunsaker's Crim. P. 35(c) arguments is related to the illegality in his sentence and remand for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶5 William Hunsaker, Jr., has spent the last fifteen years challenging his convictions for two criminal offenses. In June 2006, a jury found him guilty of sexual assault on a child ("count I") and sexual assault on a child as a pattern of abuse ("count II"). The trial court found that these were "extraordinary risk" crimes, subject to an enhanced sentence for that reason, and sentenced Hunsaker to eight years to life for count I and sixteen years to life for count II, to run concurrently. Hunsaker appealed, and his convictions were affirmed. On January 31, 2011, the mandate issued.
¶6 Two months later, Hunsaker filed a Crim. P. 35(a) motion, arguing that his sentence was illegal as to both counts because neither was an extraordinary risk crime. The prosecution agreed that neither count constituted an extraordinary risk crime but maintained that the count II sentence to sixteen years was nonetheless lawful because that count charged a per se crime of violence. The district court concluded that both sentences were illegal and, in June 2011, amended the mittimus to reflect Hunsaker's sentence of six years to life for count I and twelve years to life for count II.
¶7 The prosecution appealed the court's finding as to count II. In January 2013, a division of the court of appeals concluded that the original count II sentence was lawful, and in June 2015, we affirmed. Hunsaker v. People , 2015 CO 46, ¶ 40, 351 P.3d 388, 396. In February 2016, the district court amended the mittimus to reinstate the original count II sentence.
¶8 That same month, Hunsaker filed the Crim. P. 35(c) motion for postconviction review that is now before this court. He argued that his conviction was infirm because the district court had violated his rights to a jury trial, to due process, and to be free from double jeopardy. Additionally, Hunsaker argued that he had received ineffective assistance of counsel for several reasons, including because counsel failed to object to the imposition of an illegal sentence. The district court found Hunsaker's motion timely, and the prosecution did not argue otherwise. Nonetheless, it denied Hunsaker's motion on the merits without a hearing.
¶9 Hunsaker appealed, and the court of appeals affirmed, albeit on different grounds. See Hunsaker , ¶ 1, 490 P.3d at 690. Addressing an argument the prosecution raised for the first time on appeal, the division found all but one of Hunsaker's arguments time-barred. 1 Id. As the division explained, under section 16-5-402(1), most felony defendants must file a Crim. P. 35(c) motion within three years of the date of their conviction. Hunsaker , ¶ 13, 490 P.3d at 691. Applying the holding of Hampton —that the date of Hunsaker's conviction was the date his appeal was exhausted—the division determined that the limitations period expired on January 31, 2014. Id. , 490 P.3d at 691–92. Hunsaker had missed that deadline because he filed his Crim. P. 35(c) motion on February 16, 2016. Id. , 490 P.3d at 692.
¶10 The division then asked whether Leyva might nonetheless allow Hunsaker's motion to proceed. Id. at ¶¶ 14–16, 490 P.3d at 692. It determined that, under Leyva , correction of an illegal sentence allows a defendant to pursue otherwise time-barred Crim. P. 35(c) claims "that are related to how the illegality in the original sentence potentially affected a defendant's original conviction." Id. at ¶ 16, 490 P.3d at 692. The division concluded that only one of Hunsaker's arguments arguably fell into this category; namely, that counsel was ineffective for failing to object when the court sentenced him for an extraordinary risk crime as to count I—the count that was found to have included an illegal sentence. Id. at ¶ 17, 490 P.3d at 692. Assuming without deciding that this claim was timely, the division found that it nonetheless failed as a matter of law because the only prejudice Hunsaker alleged related to his count II sentence, which was not illegal. Id. at ¶¶ 23–29, 490 P.3d at 693–94.
¶11 In reaching this conclusion, the division of the court of appeals here disagreed with another division, which had concluded that, under Leyva , correction of an illegal sentence renews the limitations period for filing a Crim. P. 35(c) motion with regard to all claims. See Baker , ¶¶ 37–42, 461 P.3d at 540.
¶12 Hunsaker filed a petition for certiorari review, which we granted.2 II. Analysis
¶13 After setting out the standard of review, we examine the law leading up to our decision in Leyva and acknowledge that certain contradictory language in that case has caused confusion. We then explain that, although Leyva incorrectly stated that a conviction is not final until a sentence is lawful, its narrower holding is correct: The correction of an illegal sentence allows a defendant to subsequently pursue a collateral attack related to the illegality in the original sentence. This is true because the tardiness of these arguments is justifiably excused under section 16-5-402(2) (d). We also reaffirm Hampton 's conclusion that a "conviction" for purposes of section 16-5-402(1) occurs once appeal is exhausted.
¶14 We then turn to Hunsaker's Crim. P. 35(c) motion, finding that it was filed after the deadline established by section 16-5-402(1), but, because his original sentence was illegal, the late filing of arguments related to that illegality is permitted by section 16-5-402(2)(d). Because neither the district court nor the court of appeals has had an opportunity to consider arguments about the applicability of section 16-5-402(2)(d) to Hunsaker's other claims under the particular circumstances of this case, we remand for further proceedings consistent with this opinion.
A. Standard of Review ¶15 We review questions of statutory interpretation de novo. People v. Huckabay , 2020 CO 42, ¶ 13, 463 P.3d 283, 286. In interpreting section 16-5-402, we must give effect to the legislature's intent. Hampton , 876 P.2d at 1239. We begin with the plain language of the statute and aim to harmonize the procedures applicable to motions under Crim. P. 35. Leyva , 184 P.3d at 50. ¶16 "This court has plenary authority to promulgate and interpret the rules of criminal procedure." People v. Bueno , 2018 CO 4, ¶ 18, 409 P.3d 320, 325 (quoting People v. Steen , 2014 CO 9, ¶ 10, 318 P.3d 487, 490 (citing Colo. Const. art. VI, § 21) ). Accordingly, we review constructions of those rules de novo, "employing the ‘same interpretive rules applicable to statutory construction.’ " Bueno , ¶ 18, 409 P.3d at 325 (quoting People v. Corson , 2016 CO 33, ¶ 44, 379 P.3d 288, 297 ).
B. Relevant Legal Principles
¶17 Under Colorado law, individuals convicted of a crime are entitled to turn to the courts for various remedies. For example, after a trial court enters a judgment of conviction and imposes a sentence, the defendant has a right to challenge the finding of guilt and the sentence on direct appeal. § 16-12-101, C.R.S. (2021). The notice of that appeal must be filed within forty-nine days after the entry of the order or judgment appealed from. C.A.R. 4.
¶18 Separately, defendants may seek postconviction review of either a sentence or a conviction. See § 18-1-410(1), C.R.S. (2021) (providing that "every person convicted of a crime is entitled as a matter of right to make applications for postconviction review"). Crim. P. 35 provides three avenues for this relief.
¶19 First, a defendant may move to correct a sentence "that was not authorized by law or that was imposed without jurisdiction at any time." Crim P. 35(a). These "illegal sentence" claims can encompass a wide range of different factual circumstances. Some involve allegations like those presented here—that the court imposed a prison term longer than is permitted by the applicable statute. Others involve claims that the restitution imposed was either not permitted or was in the wrong amount, see, e.g., People v. Brooks , 250 P.3d 771, 772 (Colo. App. 2010) ; that sentences that should have been imposed to run concurrently were imposed to run consecutively, see, e.g., People v. White , 179 P.3d 58, 60–61 (Colo. App. 2007) ; or that a sentence to mandatory parole was incorrect because the relevant statute required discretionary parole, see, e.g., People v. Rockwell , 125 P.3d 410, 417 (Colo. 2005). We have previously noted that "[s]entences become illegal in different ways, and depending on the nature of the illegality, certain illegal sentences can be corrected through resentencing and imposition of a legal sentence while other illegal sentences require that the judgment of conviction be vacated." Delgado v. People , 105 P.3d 634, 637 (Colo. 2005).
¶20 Second, a defendant has eighteen weeks after a series of specified events to ask the court to reduce a sentence. Crim. P. 35(b). The correction of an illegal sentence pursuant to Crim. P. 35(a) restarts the clock for purposes of 35(b). Delgado , 105 P.3d at 638. This is because the Crim. P. 35(b) filing deadline "begins running only after the imposition of a legal sentence." Delgado , 105 P.3d at 638.
¶21 Finally, a defendant can file a postconviction challenge not only to the sentence imposed but to the underlying conviction itself by filing a Crim. P. 35(c) motion. But to make such an application, defendants must file a motion within the time limits established by section 16-5-402(1) or show that an exception in section 16-5-402(2) applies. Felony defendants—except those convicted of class one felonies—have three years from the time of their "convictions" to file a Crim. P. 35(c) motion unless they can identify an exception that permits a later filing.3 To timely file a Crim. P. 35(c) motion, then, defendants must understand when their "conviction" occurred for purposes of section 16-5-402(1).4 ¶22 In Hampton , we asked whether a "conviction" occurs for these purposes after the trial court enters a judgment of conviction or after a defendant exhausts the appellate process. 876 P.2d at 1237. We recognized that a defendant has two potentially conflicting statutory rights: the right to direct appeal and the right to postconviction review after the conviction has been affirmed on appeal. Id. at 1240–41. If the three-year limitations period for collateral attack started running from the moment a trial court entered judgment, then a defendant might not have time both to appeal and subsequently to seek postconviction review. Id. Defendants might thus be forced to choose between these two rights—a result both unfair and contrary to legislative intent. Id. To avoid that result, we interpreted the word "conviction" under section 16-5-402(1) to include "the time that an appeal is pending." Hampton , 876 P.2d at 1241. Thus, we held that a "conviction" would not occur, and the limitations period for seeking postconviction review would not begin to run, until a "defendant's appeal ha[d] been exhausted." Id.
¶23 Later, in Leyva , we asked whether a "conviction" occurs after a defendant's appeal was exhausted even if the defendant's sentence was later determined to be illegal. 184 P.3d at 50. Recall that, under Crim. P. 35(a), a defendant may correct a sentence "that was not authorized by law or that was imposed without jurisdiction at any time. " (Emphasis added.) Theoretically then, a defendant could exhaust the appellate process—rendering their conviction final under Hampton —but, many years later, file a motion to correct their sentence under Crim. P. 35(a). For instance, Leyva's original conviction occurred in 1993; the trial court corrected his sentence in 2001; and he sought postconviction review in 2004. Leyva , 184 P.3d at 49. Could a Crim. P. 35(c) motion filed eleven years after the opportunity to appeal expired still be deemed timely? In Leyva , we held that it could, and we reached this result by again considering the meaning of the term "conviction." Id. at 50–51. We reasoned that a conviction for purposes of section 16-5-402(1) "must refer to a valid, final determination of guilt and sentencing," and an illegal sentence is not final because it is subject to correction. Leyva , 184 P.3d at 50. Thus, we concluded that "a judgment containing an illegal sentence is ... not yet a ‘conviction’ " for purposes of section 16-5-402(1). Leyva , 184 P.3d at 50.
¶24 Leyva , however, has caused confusion. In that case we stated, rather broadly, that an illegal sentence would "renew[ ] the three-year deadline for collaterally attacking the original judgment of conviction pursuant to Crim. P. 35(c)." Id. at 51. But we also stated, more narrowly, that "[i]f an illegality is discovered in a prisoner's sentence, the prisoner should be allowed to pursue any good-faith arguments for postconviction relief addressing how that illegality potentially affected his or her original conviction." Id. at 50. Because Leyva argued that "the late-discovered illegality in his sentence help[ed] establish that he received ineffective assistance of counsel in entering his guilty plea," id. , our remand was consistent with both the broader statement and the narrower one.
¶25 Hunsaker and the court of appeals in Baker read the former language as requiring that correction of an illegal sentence restarts the limitations period for all arguments a defendant might raise in a collateral attack.5 But the prosecution and the court of appeals here rely on the latter language to conclude that correction of an illegal sentence only renews the Crim. P. 35(c) limitations period for arguments related to the illegality in the sentence. ¶26 We now affirm Leyva 's more limited statement and disavow the notion that a "conviction" does not occur until an illegal sentence is corrected. A defendant who successfully corrects an illegal sentence may thereafter collaterally attack their conviction, but they may only raise arguments addressing how the illegality in the sentence potentially affected the original conviction.6 This is true not because a "conviction" for purposes of section 16-5-402(1) never becomes final until a legal sentence is entered but rather because these sorts of arguments are properly brought pursuant to section 16-5-402(2)(d), which allows for otherwise untimely collateral attacks in cases of justifiable excuse and excusable neglect. In reaching this conclusion, we reaffirm our holding in Hampton —"the meaning of the word ‘conviction’ in section 16-5-402(1) refers to a conviction after a defendant's appeal has been exhausted." 876 P.2d at 1240.
¶27 In Leyva , we suggested that, just as a trial court's entry of judgment is not yet final because it is subject to appeal, a conviction containing an illegal sentence is not yet final because it is subject to correction. 184 P.3d at 50. That reasoning, however, overlooked an important distinction between direct appeal and correction of an illegal sentence. While direct appeals have a determinable end point, arguments that a sentence "was not authorized by law" may be brought "at any time." Crim. P. 35(a). Thus, if the definition of "conviction" for purposes of section 16-5-402(1) is tied to a defendant's ability to correct their sentence, then the finality of a conviction will always be subject to question. In fact, a sentence that had been final for many years would suddenly cease to be final.
¶28 In Leyva's case, for example, his conviction became final—as we defined that concept in Hampton —in 1993 when Leyva declined to pursue a direct appeal. See Leyva , 184 P.3d at 49. He did not challenge the legality of his sentence until six years later, and it was only in 2001 that the court concluded his sentence required correction. See id. If we were to maintain the broader interpretation of Leyva 's holding, we would have to conclude that Leyva's conviction had not been final during any part of that nine-year period and, indeed, that if he had not pursued the Crim. P. 35(a) claim, his conviction never would have been final because it included an illegal sentence. Such a result runs contrary to the purpose of section 16-5-402, which is to avoid "the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders." § 16-5-402(2).
¶29 Further, this clarification of Leyva's holding is consistent with our reasoning in Hampton. There, we resolved a potential conflict between two statutory rights. Because there is no similar tension between the right to collateral attack and the right to correct an illegal sentence, an open-ended expansion of the three-year time limit established by the legislature for Crim. P. 35(c) claims is not warranted.
¶30 Hunsaker argues, however, that the rights to correct an illegal sentence and to seek postconviction review do in fact conflict. According to Hunsaker, in cases where the prosecution appeals a district court's order to correct an illegal sentence—as happened here—the district court would be divested of jurisdiction over any simultaneously filed Crim. P. 35(c) motion during the pendency of that appeal and the defendant could thereby lose the right to file a 35(c) motion. We disagree for two reasons.
¶31 First, a district court may well retain jurisdiction over Crim. P. 35(c) arguments that are unrelated to the illegal sentence because the doctrine of divestment only prevents a lower court from entering "rulings affecting the judgment subject to appeal. " Sanoff v. People , 187 P.3d 576, 578 (Colo. 2008) (emphasis added); see also id. (noting that "the filing of a valid notice of appeal does not automatically strip the trial court of jurisdiction to take any further action"); People v. Stewart , 55 P.3d 107, 126 (Colo. 2002) ("A trial court retains jurisdiction to act on matters that are not relative to and do not affect the judgment on appeal."); Molitor v. Anderson , 795 P.2d 266, 269 (Colo. 1990) ("[T]he filing of a notice of appeal divests a trial court of authority to consider matters of substance affecting directly the judgment appealed from."). Defendants seeking postconviction review may raise a wide range of arguments unrelated to the sentence imposed, contending, for instance, that a conviction is infirm based on prosecutorial misconduct; juror misconduct; evidence of actual innocence; or violations of a defendant's rights to confrontation, to due process, or to be free from double jeopardy, among others. Only in limited circumstances will a Crim. P. 35(c) motion raise arguments that are related to an illegal sentence. See Delgado , 105 P.3d at 637 ("Sentences become illegal in different ways, and depending on the nature of the illegality, certain illegal sentences can be corrected through resentencing and imposition of a legal sentence while other illegal sentences require that the judgment of conviction be vacated.").
¶32 Second, and perhaps even more important, the possibility that a district court might find that it lacks jurisdiction to act on a defendant's Crim. P. 35(c) claims does not prevent the defendant from timely filing a Crim. P. 35(c) motion. Section 16-5-402(1) defines when a defendant must file a motion for postconviction relief; it says nothing about when a court must rule on that motion. Cf. People v. Fuqua , 764 P.2d 56, 59 (Colo. 1988) (noting that, under Crim. P. 35(b), "a sentencing court is not required to rule on the motion for reduction within 120 days after the imposition of the original sentence but rather may rule on the motion beyond the 120-day period so long as the motion itself is filed within 120 days after the imposition of sentence"). And there is nothing that would prevent a defendant from bringing Crim. P. 35(a) and (c) motions at the same time. See, e.g., People v. Fritz , 2014 COA 108, ¶ 6, 356 P.3d 927, 929 (defendant files simultaneous Crim. P. 35(a) and 35(c) motions); People v. Stovall , 2012 COA 7M, ¶ 1, 284 P.3d 151, 152 (same); People v. Wirsching , 30 P.3d 227, 228 (Colo. App. 2000) (same); People v. Montaine , 7 P.3d 1065, 1066 (Colo. App. 1999) (same); People v. Fitzgerald , 973 P.2d 708, 709 (Colo. App. 1998) (same), abrogated on other grounds by People v. Subjack , 2021 CO 10, ¶¶ 25–26, 480 P.3d 114, 119–20 ; People v. Greymountain , 952 P.2d 829, 830 (Colo. App. 1997) (same). Neither does a pending appeal on a Crim. P. 35(a) motion prevent the timely filing of a Crim. P. 35(c) motion, particularly given the two types of postconviction proceedings have "separate purposes and limitations." Rockwell , 125 P.3d at 422 (Coats, J., concurring). If a court concludes that it cannot act on any of the claims raised in a Crim. P. 35(c) motion during the pendency of the Crim. P. 35(a) appeal, the court can hold those claims and consider them when the appeal is resolved. This is in effect what happened in Hunsaker's case when the district court found that it would be "premature" to consider Hunsaker's Crim. P. 35(b) claim given the court's order on his Crim. P. 35(a) claim, and other district courts have long done the same when Crim. P. 35 motions in the district court may affect matters on appeal, see, e.g., People v. Greigo , No. 03CR2, 2012 WL 3262296 (Colo. Dist. Ct. June 4, 2012) (unpublished order) (deciding defendant's Crim. P. 35(b) motion only after the conviction was affirmed on appeal because, given that the mandate had issued, the district court "now ha[d] jurisdiction to rule"); People v. Close (Colo. Dist. Ct. No. 90CR3089, Aug. 20, 1996) (unpublished order) (staying further proceedings on Crim. P. 35(c) motion pending appeal of Crim. P. 35(b) motion).
¶33 Of course, under section 16-5-402(2)(d), a defendant who misses the deadline for filing a Crim. P. 35(c) motion may nonetheless seek postconviction review if the "failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." And Crim. P. 35(c)(3)(I) explains that "[a]ny motion filed outside of the time limits set forth in § 16-5-402 [ ] shall allege facts which, if true, would establish one of the exceptions listed in § 16-5-402(2) [ ]." The justifiable excuse exception to section 16-5-402(1)'s time limits "give[s] effect to the overriding concern" that, as a matter of due process, defendants must have a "meaningful opportunity" to challenge their convictions, and it recognizes that strict time limits on postconviction review can sometimes undermine any such opportunity. People v. Wiedemer , 852 P.2d 424, 441 (Colo. 1993). Accordingly, section 16-5-402(2)(d) allows courts to hear otherwise untimely collateral attacks where the untimeliness is attributable to justifiable excuse or excusable neglect. See People v. Chavez-Torres , 2019 CO 59, ¶ 14, 442 P.3d 843, 847–48 (explaining that several factors are relevant to the justifiable excuse analysis, including "whether circumstances or outside influences prevented a timely challenge to a conviction").
¶34 A court's correction of an illegal sentence is precisely the sort of outside circumstance that excuses the untimely filing of a collateral attack with regard to claims that the illegal sentence rendered the conviction itself infirm. Cf. Craig v. People , 986 P.2d 951, 966 (Colo. 1999) (finding that "a plea agreement to reduce or modify the statutorily mandated period of parole calls for an illegal sentence" and explaining that "[i]f a plea was actually induced by such a promise, the defendant must be given the opportunity to withdraw the plea"). Indeed, until a court agrees that a sentence is illegal, a defendant can hardly challenge their conviction for reasons related to that illegality. Cf. Delgado , 105 P.3d at 637–38. And, as we noted in Leyva , it would be unfair to prevent a defendant from collaterally attacking a conviction for reasons related to an illegal sentence simply because that sentence was corrected after section 16-5-402(1)'s limitations period expired. 184 P.3d at 50. Such a result would undermine the legislature's prescription that "every person convicted of a crime is entitled as a matter of right to make applications for postconviction review." § 18-1-410(1). Accordingly, the late filing of a collateral attack related to the illegality in a sentence is permitted under the justifiable excuse exception when the court corrects an illegal sentence pursuant to Crim. P. 35(a).
¶35 But the court's correction of an illegal sentence cannot excuse the defendant's failure to timely bring a collateral attack unrelated to that illegality. Those arguments were always available to the defendant, regardless of whether the court would eventually correct the sentence.
C. Application
¶36 For purposes of section 16-5-402(1), Hunsaker's conviction became final on January 31, 2011, when he exhausted direct appeal and the mandate issued affirming his conviction. But Hunsaker did not file his Crim. P. 35(c) motion until February 16, 2016—well past his three-year deadline. Accordingly, Hunsaker's motion is untimely, and it cannot proceed unless an exception under section 16-5-402(2) applies.
¶37 Hunsaker's original sentence was illegal, and the district court amended the mittimus to reflect the proper sentence in February 2016. Before this time—when the court entered the final, lawful sentence—Hunsaker was justifiably excused for not raising a collateral attack related to the illegality in his sentence.7 As such, the court can hear Hunsaker's otherwise time-barred Crim. P. 35(c) motion to the extent it presses arguments related to the illegality in his original sentence.
¶38 Hunsaker's Crim. P. 35(c) motion raises several arguments. First, he contends that the trial judge violated his due process rights because, after his counsel and the prosecution raised the issue of Hunsaker's competence, the court failed to follow statutory requirements for assessing a defendant's competence and allowed Hunsaker to be tried, convicted, and sentenced without any competency determination. Second, Hunsaker argues that the court violated his right to a jury trial by imposing a sentence beyond the maximum in the presumptive range without a jury finding of aggravating circumstances. Third, he argues that the court violated his right to be free from double jeopardy by increasing his sentence after he completed the minimum term and was released on parole. And finally, he maintains that he received ineffective assistance of counsel because counsel (1) failed to adequately prepare for trial; (2) advised Hunsaker to flee the jurisdiction; (3) had a conflict of interest; (4) failed to attend trial and sentencing; (5) failed to handle Hunsaker's competency appropriately; and (6) failed to object to the imposition of sentences for extraordinary risk crimes.
¶39 Hunsaker has asserted on appeal that each of these arguments is "related to" the illegality in his sentence because (1) the court that erred when sentencing him is the same court that erred by violating his due process rights, right to a jury trial, and right to be free from double jeopardy; (2) had the court sentenced him correctly in the first place, he never would have had to pursue a Crim. P. 35(a) motion and would have instead moved directly to collateral attack; and (3) counsel's ineffective assistance at sentencing is tied together with all of the instances where counsel was allegedly ineffective. But Hunsaker pushes Leyva too far. ¶40 In assessing Hunsaker's six arguments, the court of appeals correctly determined that the only one that relates to the illegality in Hunsaker's original sentence is the argument that counsel was deficient for failing to object to the imposition of an extraordinary risk sentence for count I. Hunsaker's other five arguments address counsel's performance and the court's errors leading up to and during trial, violation of Hunsaker's right to a jury trial, and error related to the reinstatement of his count II sentence, which was actually lawful. Because such arguments are unrelated to the illegality in Hunsaker's count I sentence, their late filing cannot be excused by the correction of Hunsaker's sentence.
¶41 Under the particular circumstances of this case, however, these arguments also may fall within section 16-5-402(2)(d)'s justifiable excuse and excusable neglect exception. Hunsaker seems likely to have relied on the language in Leyva that we have now disavowed in delaying the filing of his Crim. P. 35(c) motion. This point, however, was not argued in the courts below, and we decline to address it now. Instead, we remand for further proceedings consistent with this opinion, including proceedings relevant to the applicability of section 16-5-402(2).
III. Conclusion
¶42 For these reasons, we affirm the decision of the court of appeals and remand the case for further proceedings consistent with this opinion.
JUSTICE GABRIEL dissents, and CHIEF JUSTICE BOATRIGHT joins in the dissent.
JUSTICE GABRIEL, dissenting.
¶43 Today, the majority concludes that (1) the time for filing a postconviction motion under Crim. P. 35(c) begins to run upon the entry of the mandate after a defendant's direct appeal, even if the defendant's sentence was illegal; and (2) the correction of a defendant's illegal sentence resets the time period for filing a Crim. P. 35(c) motion only for those claims that relate to how the sentence illegality may have affected the defendant's original conviction. Maj. op. ¶¶ 3, 26, 36. Because the majority's decision is inconsistent with this court's longstanding precedent, most notably our decision in Leyva v. People , 184 P.3d 48 (Colo. 2008), and because, unlike the majority, I perceive no reason to depart from that settled precedent, I respectfully dissent.
I. Factual Background
¶44 The majority has adequately laid out the pertinent facts, and I need not repeat that recitation here. I, however, emphasize three facts that I deem particularly pertinent to my analysis.
¶45 First, a mandate reflecting a completely legal sentence did not enter in this case until August 6, 2015, and Hunsaker filed his Crim. P. 35(c) motion six months later, on February 16, 2016.
¶46 Second, the People did not argue in the postconviction court that Hunsaker's Crim. P. 35(c) motion was untimely, and the court expressly found that Hunsaker's motion was timely filed. This conclusion made perfect sense, given that the postconviction court had previously ruled, "[B]ecause the time period for filing a motion to reconsider a sentence does not begin to run until the imposition of a legal sentence, the Court will withhold as premature any ruling on the Defendant's [alternative motion under Crim. P. 35(b) for a sentence reduction] at this time." Hunsaker reasonably relied on this statement in waiting to file his Crim. P. 35(c) motion.
¶47 Third, in their answer brief in the court of appeals, the People argued, for the first time, that Hunsaker's motion was untimely as to claims unrelated to the potential effect of his illegal sentence on his original judgment of conviction, and the division ultimately agreed.
II. Analysis
¶48 I begin by discussing Leyva , and I explain why the court's decision today is inconsistent with that longstanding precedent. I then explain why I believe the majority errs in concluding that the time for filing a Crim. P. 35(c) motion begins to run upon the entry of the mandate after a direct appeal, even if the defendant's sentence was illegal. I end by expressing my view that even if Hunsaker filed any of his Crim. P. 35(c) claims late, then, on the undisputed facts of this case, justifiable excuse and excusable neglect are manifest, and for that reason as well, Hunsaker should be permitted to pursue all of his Crim. P. 35(c) claims.
A. Leyva
¶49 In Leyva , 184 P.3d at 49, we granted certiorari to consider "whether the entry of an amended judgment of conviction, correcting a prisoner's sentence on one count, renewed the three-year deadline for bringing a collateral attack pursuant to Crim. P. 35(c) regarding the original judgment of conviction." We ultimately held:
[B]ecause Defendant Joshua Leyva's original judgment of conviction contained an illegal sentence on one count, the entire sentence was illegal. The sentence was therefore subject to correction and the judgment of conviction was subject to amendment, such that the judgment of conviction was not final or fully valid. Accordingly, the three-year deadline for bringing a Crim. P. 35(c) motion regarding the original conviction was not triggered until Leyva's sentence was corrected, and his judgment of conviction amended. Id.
¶50 In reaching this conclusion, we recited several longstanding principles of law that, at least until today, I thought were incontrovertible. Specifically, we observed that we had previously considered the meaning of the term "conviction," as that term is used in section 16-5-402(1), C.R.S. (2021), and had concluded that the term "refers to a conviction after a defendant's appeal has been exhausted." Id. at 50 (quoting People v. Hampton , 876 P.2d 1236, 1240 (Colo. 1994) ). We went on to say, contrary to the majority's opinion today, that "the term ‘conviction’ as it is used in section 16-5-402(1) does not simply refer to the initial entry of a judgment of conviction. Rather, the term ‘conviction’ must refer to a valid, final determination of guilt and sentencing. " Id. (emphasis added). We then said that the fact that Leyva's original judgment of conviction included an illegal sentence "rendered illegal the entire sentence, on all counts, contained in the judgment." Id. And because the judgment contained an illegal sentence, "it was no more valid or final than a judgment that is still subject to appeal." Id. In other words, the judgment was not yet a "conviction" within the meaning of section 16-5-402(1). Id.
¶51 In light of the foregoing, we concluded, "[W]hen an illegal sentence is corrected pursuant to Crim. P. 35(a), it renews the three-year deadline for collaterally attacking the original judgment of conviction pursuant to Crim. P. 35(c)." Id. at 50–51. We therefore remanded the case for consideration of all of Leyva's Crim. P. 35(c) claims, even though his sentence was deemed illegal as to only one count. Id. at 49–51.
¶52 In my view, our decision in Leyva resolves the issue now before us. Here, as in Leyva , Hunsaker's original sentence was illegal in part. This, in turn, rendered illegal Hunsaker's entire sentence on all counts, such that the judgment against him was not fully valid or final and was therefore not yet a "conviction" for purposes of section 16-5-402(1). See Leyva , 184 P.3d at 50. Indeed, for the reasons set forth in Leyva , Hunsaker did not have a fully valid or final conviction until August 6, 2015, when a mandate first issued reflecting a completely legal sentence. It was only then that a "conviction" for purposes of section 16-5-402(1) entered, and it was only then that Hunsaker's time to file a Crim. P. 35(c) motion began to run. See Leyva , 184 P.3d at 50–51. Thus, in my view, all of Hunsaker's Crim. P. 35(c) claims were timely filed.
¶53 I am not persuaded otherwise by the majority's (and the division's) reliance on the statement in Leyva that, "[i]f an illegality is discovered in a prisoner's sentence, the prisoner should be allowed to pursue any good-faith arguments for postconviction relief addressing how that illegality potentially affected his or her original conviction." Id. at 50. There, we were not distinguishing between Crim. P. 35(c) claims that were related to the illegality and claims that were not. Indeed, were that what we intended, we would not have remanded the case with instructions to allow Leyva to pursue all of his Crim. P. 35(c) claims, whether they related to the illegality or not. See People v. Baker , 2017 COA 102, ¶¶ 40–41, 461 P.3d 534, 540, rev'd on other grounds , 2019 CO 97M, 452 P.3d 759. We did so based on our conclusion that no "conviction" had entered until after the correction of the illegal sentence, Leyva , 184 P.3d at 50, and that principle should apply in the present case as well.
¶54 A number of troubling consequences flow from the majority's decision to depart from Leyva.
¶55 First, section 16-5-402(1) sets the time limit for a postconviction challenge based on the date of "conviction," and, as noted above, a "conviction" has long been understood to refer to a final and valid conviction. See, e.g., Leyva , 184 P.3d at 50. Section 16-5-402(1) does not provide one timeline for valid convictions and another timeline for invalid convictions, but the majority effectively rewrites the statute to create such a distinction. This, however, is not a court's proper role.
¶56 Our decision in Hampton , on which the majority extensively relies, is not to the contrary. The issue before us in Hampton , 876 P.2d at 1237, was whether the time limits imposed by section 16-5-402(1) begin to run after the conviction in the trial court or after the appellate process has been exhausted, when a direct appeal has been filed. Answering the question before us, we concluded that the term "conviction" in section 16-5-402(1) refers to a conviction after a defendant's appeal has been exhausted (as distinguished from the conviction in the trial court). Hampton , 876 P.2d at 1240. Hampton did not consider the question presented in this case, namely, how to construe the term "conviction" when the initial judgment was illegal in part. Leyva , however, directly addressed that question. Accordingly, in my view, Leyva , and not Hampton , should control here.
¶57 Second, the majority's ruling creates substantial uncertainty as to the timeline for filing a Crim. P. 35(c) motion. Must defendants with legitimate illegal sentence claims file postconviction motions before knowing what their proper sentences are (i.e., before knowing what their judgments of conviction are)? And when, exactly, is a claim related to the illegality? The majority's decision invites litigation on a wealth of new issues, in direct contravention of the majority's purported concern for finality. See maj. op. ¶ 27.
¶58 Third, the majority's ruling today ensures piecemeal Crim. P. 35(c) litigation in any case involving an illegal sentence claim, again in direct contravention of the majority's stated concern for finality, not to mention Crim. P. 35(c)'s express prohibition on successive motions. See Crim. P. 35(c)(3)(VI)–(VII). In addition, the majority now effectively requires a postconviction claimant to file a placeholder Crim. P. 35(c) motion, while simultaneously pursuing relief under Crim. P. 35(a) in the appellate courts. Maj. op. ¶ 32. I am not aware of any precedent or rule supporting such a procedure, nor do I perceive a persuasive justification for it. Although the majority appears to impose this requirement in order to address its concern for "stale claims," id. at ¶ 28, filing a placeholder motion and then waiting, perhaps years, for simultaneous Crim. P. 35(a) proceedings to conclude does nothing to alleviate that concern. Instead, such a procedure introduces unnecessary complexity and duplication of effort, with the attendant risks of creating traps for the unwary and inviting conflicting rulings from different courts.
¶59 Finally, in my view, the majority effectively overrules the principal holding in Leyva without even a mention of the settled principles of stare decisis. Contrary to the People's exposition of the parade of horribles that would result from adherence to Leyva , that decision has been on the books for over a decade without adverse consequences of which I am aware. I perceive no basis to dispose of a clear, longstanding, and well-working rule in favor of a rule that I believe will engender confusion and additional litigation for years to come.
¶60 I likewise am unpersuaded by the People's suggestion that the conclusion that I would reach today would result in the possibility of a renewed Crim. P. 35(c) deadline many years down the road, at the risk of great prejudice to the People. In my view, the likelihood of the scenario that the People portend is remote because it presumes that postconviction claimants will delay filing Crim. P. 35(c) motions in the hope that, someday, they may have an argument that their sentences were illegal. Assuredly, convicted defendants will not sit in prison, holding back Crim P. 35(c) claims in the hope of raising them sometime in the unforeseeable future. Moreover, because successful Crim. P. 35(a) claims are rare, I would anticipate that those convicted of crimes will ordinarily file Crim. P. 35(c) claims within the three-year limitations period, unless, perhaps, they have a then-existing Crim. P. 35(a) claim. In that case, it would make sense for these claimants to wait, so that they would not be forced to collaterally attack their judgments of conviction before even knowing what those judgments are.
¶61 Nor am I persuaded by the People's related contention that applying Leyva in cases like this may create a scenario in which the People will be unable to defend against long-delayed Crim. P. 35(c) claims. Again, in my view, the likelihood of such claims is remote. Moreover, the consequences of such a delayed filing would likely impose more of a burden on postconviction claimants than on the People, because such claimants may find it difficult, if not impossible, to prove their Crim. P. 35(c) claims long after the fact.
¶62 For these reasons, I would adhere to Leyva and conclude that the correction of an illegal sentence resets the three-year deadline for filing a Crim. P. 35(c) motion attacking the original judgment of conviction. Accordingly, I would conclude that each of Hunsaker's Crim. P. 35(c) claims was timely filed, and I would allow Hunsaker to pursue those claims.
B. Date of "Conviction"
¶63 For the same reasons, I also disagree with the majority's view that the date of Hunsaker's conviction for purposes of section 16-5-402(1) was January 31, 2011, the date the mandate affirming Hunsaker's conviction on direct appeal issued, even though that mandate included an illegal sentence. See maj. op. ¶ 36. As noted above, as of the issuance of that mandate, Hunsaker's conviction was "neither fully valid nor final," Leyva , 184 P.3d at 50, and it makes no sense to me to start running the time to file a postconviction motion before a valid and final judgment has entered. Postconviction claimants simply should not be required to challenge their judgments of conviction until all parts of those judgments are legal and finally determined.
¶64 In so concluding, I am not persuaded by the majority's assertion that the principle that we articulated in Leyva is problematic because it would suggest that "a sentence that had been final for many years would suddenly cease to be final." Maj. op. ¶ 27. In so stating, the majority simply assumes its conclusion, namely, that an illegal sentence can be a final sentence. Unlike the majority, I am not troubled by a rule providing that a sentence is not final until it is legal. Indeed, that is precisely why our criminal procedure rules allow a defendant to challenge an illegal sentence at any time. Crim. P. 35(a). And to the extent that finality is delayed for whatever time it may take to correct an illegal sentence, I perceive no basis to hold that delay against the defendant, who was forced to endure the illegal sentence, perhaps for a lengthy period of time.
C. Justifiable Excuse or Excusable Neglect
¶65 Lastly, even were I to agree with the majority that most of Hunsaker's Crim. P. 35(c) claims were somehow untimely, I would conclude, unlike the majority, maj. op. ¶ 41, that, on the undisputed facts of this case, justifiable excuse and excusable neglect are manifest and Hunsaker should therefore be permitted to pursue those claims.
¶66 Under section 16-5-402(2)(d), the three-year deadline for collaterally attacking a conviction does not apply "[w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." In determining whether a defendant has demonstrated justifiable excuse or excusable neglect, courts must examine the particular facts of the case so as to effectuate the overriding concern that defendants have a meaningful opportunity to challenge their convictions. Close v. People , 180 P.3d 1015, 1019–20 (Colo. 2008) (noting the non-exhaustive list of factors that courts should consider in addressing the issue of justifiable excuse or excusable neglect under section 16-5-402 ).
¶67 Here, for two reasons, I believe that any untimeliness by Hunsaker was the product of justifiable excuse or excusable neglect.
¶68 First, in filing when he did, Hunsaker relied on our unequivocal conclusion in Leyva , 184 P.3d at 50–51, that "when an illegal sentence is corrected pursuant to Crim. P. 35(a), it renews the three-year deadline for collaterally attacking the original judgment of conviction pursuant to Crim. P. 35(c)." Unlike the majority, I am unwilling to fault Hunsaker for relying on our own clear and unconditional statement of the law.
¶69 Second, as noted above, the postconviction court specifically advised Hunsaker that it deemed premature any ruling on a time-limited postconviction motion while Hunsaker's motion to correct his illegal sentence was pending. In my view, Hunsaker reasonably interpreted this statement as applying to his Crim. P. 35(c) motion as well, and it would be manifestly unfair to preclude Hunsaker from pursuing his Crim. P. 35(c) claims when he delayed filing those claims in compliance with the postconviction court's ruling.
¶70 I would therefore conclude that even if Hunsaker's Crim. P. 35(c) motion were untimely, his delay in filing was the product of justifiable excuse or excusable neglect, and for that reason as well, he should be permitted to pursue his Crim. P. 35(c) claims here.
III. Conclusion
¶71 For these reasons, I believe that Hunsaker timely filed all of his Crim. P. 35(c) claims, and even if he somehow did not, any untimeliness was the product of justifiable excuse or excusable neglect. Accordingly, I would reverse the judgment of the division below and conclude that Hunsaker may pursue all of his Crim. P. 35(c) claims in this case.
¶72 I therefore respectfully dissent.
¶73 I am authorized to state that CHIEF JUSTICE BOATRIGHT joins in this dissent.
1 Under section 16-5-402(1.5), an appellate court may deny a motion for postconviction relief as untimely based on "the face of the motion, files, and record in a case ... regardless of whether the issue of timeliness was raised in the trial court."
2 We granted certiorari to review the following issues:
1. Whether the court of appeals erred in holding that when an illegal sentence is corrected pursuant to Crim. P. 35(a), it only renews the three-year deadline for collaterally attacking the original judgment of conviction for claims related to how the illegality in the original sentence potentially affected the original conviction, directly in conflict with its holding in People v. Baker , 2017 COA 102, 461 P.3d 534, rev'd on other grounds , 2019 CO 97M, 452 P.3d 759 (Colo. 2019).
2. [REFRAMED] Whether the court of appeals erred in holding that the date of conviction was, for purposes of postconviction relief under section 16-5-402(1), C.R.S. (2020), the date of the mandate affirming petitioner's conviction, where the judgment of conviction was corrected pursuant to Crim. P. 35(a) but only one of the claims asserted in a later-filed Crim. P. 35(c) motion relates to the illegality in the original sentence.
3 Individuals convicted of a class one felony may pursue postconviction review any time after their conviction. § 16-5-402(1).
4 The term "conviction" can have different meanings in different contexts, see Hampton , 876 P.2d at 1239, and here we address only the meaning of that term with reference to section 16-5-402(1).
5 The court of appeals division in Baker relied on our remand for general consideration of the ineffective assistance claim as evidence that Leyva could only stand for the broader proposition that the Crim. P. 35(c) clock is reset as to all claims. Baker , ¶ 41, 461 P.3d at 540. The Baker division overlooked the fact that Leyva's claim was that his counsel's failure to properly advise him about the possible length of the entire sentence led him to accept a plea deal that he otherwise would not have accepted. See Leyva , 184 P.3d at 49. The general challenge therefore was related to the illegality in his sentence. Leyva did not seek to raise a host of Crim. P. 35(c) claims entirely unrelated to his sentence as Hunsaker does here.
6 Of course, if the limitations period for seeking postconviction relief has not yet otherwise run, the defendant may raise all appropriate arguments.
7 It makes no difference that, at this point, the court reinstated the original count II sentence. It was not until the prosecution's Crim. P. 35(a) appeal was complete that Hunsaker could know to what extent his sentence was illegal and thus understand what sort of related collateral attack he could mount.